## PEOPLE *v.* HICKS.

1. CRIMINAL LAW—OBJECTION AFTER CONVICTION.
    Generally, counsel may not sit idly by during the trial and then, for the first time, interpose objections after the accused has been convicted of a felony.

2. SAME—STATUTORY RAPE—RECORD.
    Record in prosecution for statutory rape is examined in a search for error reflecting clear injustice, notwithstanding no objection was made at the trial (CLS 1961, § 750.520).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 562 *et seq.*; 21 Am Jur 2d Criminal Law §§ 222, 223.
[2] 5 Am Jur 2d, Appeal and Error § 558 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error § 809.
[4] 44 Am Jur, Rape § 113.

3. SAME —CROSS-EXAMINATION—ARGUMENT.

Cross-examination of defendant and prosecutor's argument to jury in prosecution for statutory rape *held,* not to contain any prejudicial attack on defendant's rights (CLS 1961, § 750.520).

4. RAPE—STATUTORY RAPE—EXAMINATION OF COMPLAINANT—LEADING QUESTIONS—DISCRETION OF COURT.

Examination of complainant, a 15-year-old girl, in prosecution for statutory rape *held,* not violative of defendant's rights, since it was within discretion of the trial court to allow considerable latitude in asking leading questions of young girls in such prosecution in order to elicit specific details of the event (CLS 1961, § 750.520).

Appeal from Recorder's Court; Groat (Gerald W.), J. Submitted Division 1 January 4, 1966, at Grand Rapids. (Docket No. 636.) Decided March 9, 1966.

Grady Hicks was convicted of statutory rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Rheo D. Marchand,* Assistant Prosecuting Attorney, for the people.

*Ben Rosenthal,* for defendant.

FITZGERALD, J. This appeal presents issues for consideration by this Court which are novel, but like an embryo, not completely formed.

In the first instance we are met with what has been called a form of "appellate insulation" by the fact that no objections to the alleged errors were made by defense counsel during the course of the trial and consequently the matters before us are first raised on appeal. It is, of course, the general rule in this State that counsel may not sit idly by

during the trial and then for the first time interpose objections after the accused has been convicted. *People* v. *Martin* (1965), 1 Mich App 265; *People* v. *Borowski* (1951), 330 Mich 120; *People* v. *Elliott* (1948), 322 Mich 313.

However, exercising the prerogative of searching for error which reflects clear injustice, although no objection was made at the trial, we will proceed to examine the matters before us.

The defendant, Grady Hicks, was prosecuted under CLS 1961, § 750.520 (Stat Ann 1954 Rev § 28-.788), charging him with carnal knowledge of a female minor and was tried on January 13, 1965, represented by counsel and before a jury. Since both appellant and appellee agree upon the statement of questions involved, we set them forth herewith:

## STATEMENT OF QUESTIONS INVOLVED

1. Did the trial prosecutor invade defendant's constitutional right to confront and cross-examine witnesses by asserting personal knowledge of alleged facts prejudicial to defendant?

A. By asserting such facts when cross-examining defendant.

B. By asserting such facts in his rebuttal argument.

C. By putting words into the mouth of complainant in asking her leading questions.

The lower court in effect answered "No".

Appellant contends the answer should be "Yes".

2. Should attorney's failure at the trial to make objections to errors prejudicial to defendant preclude consideration thereof by appellate court to insure against injustice?

This question arises after trial.

Appellant contends the answer should be "No".

Specifically, appellant objects to the following quoted so-called "testimony" of the trial prosecutor:

"*Q.* Then you turned off the expressway at Belleville road? You know, to up like this and down? (Apparently motioning with his hands.)

"*A.* No, I didn't.

"*Q.* How did you get off it?

"*A.* They got accesses off there where you can go across there. They're building the roads.

"After a few more questions and answers, the trial prosecutor told defendant he did not want to confuse him. The trial prosecutor then testified as follows:

" '*I'm a resident of this town (Belleville) and I'm acquainted with it.*'

"Soon the cross-examination came back to the same matter.

"*Q.* Now I ask you once again, sir, if you are traveling west on the expressway going toward Ann Arbor, how do you get off the expressway to go to her (Mrs. Gimmick's) house? Do you turn off left?

"*A.* Turn left.

"*Q.* Left. Now, in turning left off the expressway do you come off on the exit and then turn and go over the expressway?

"*A.* No.

"*Q.* You mean you just cut across the expressway left?

"*A.* Right.

"These above set forth questions and answers paved the way for the trial prosecutor to again testify. In his rebuttal arguments to the jury he reflects on defendant's claim that he cut across the expressway to the left. He then testifies:

" '*I've driven it many times; I know something about the exits. I don't know about this one.*' "

It is difficult from these excerpts to say that there was any prejudicial attack on defendant's rights. Indeed, it appears that this does not go beyond a routine cross-examination of the defendant.

Likewise, defendant states that the prosecutor, in his argument, again violated the defendant's constitutional rights by the following remarks:

"Then he says, 'From 9:20 maybe a little later because it took me some time to get out there, I was at Mrs. Gimmick's out there fishing.' But that time's not even accounted for.

"If Mrs. Gimmick said, 'Yes, he came out there about 11 o'clock and stayed till 4:30,' then he wouldn't even be available for the first act of intercourse at 2 p.m., would he? But no Mrs. Gimmick.

"He goes out the expressway, busy expressway, and just turns left, goes to Mrs. Gimmick's but he doesn't know her address. I'm sure some of you drive the expressway; I've driven it many times; I know something about the exits. I don't know about this one. He couldn't help us too much.

"And then what happens? I go into the details and everybody can tell us everything that he did on these two days in question but not much about what happened the day before this stuff began. I asked him how could he remember these things so well and not the other day: 'Well, because these are days I'm suppose to have done it.' These are the days he's suppose to have done it. But his memory can't tell us what he did the day before."

Here again we find nothing to suggest that the prosecutor made any observation which he did not have a right to make, or which was prejudicial to the defendant in any way.

Finally, appellant charges that "words were put into the mouth" of complainant by asking her leading questions.

There has probably never been a prosecution under the instant statute in which the complainant was not somewhat reluctant to describe in detail the entire transaction, including relevant portions of her anatomy and that of the defendant. Couple this

with the fact that complainant was 15 years of age and it is difficult to see how any prosecutor could properly lay the elements of the crime charged before a jury without requesting the complainant to delineate in some detail the circumstances that led to the prosecution. While specific details of the event were elicited, we find that the questions which produced them should not be classified as leading questions, tortuous though they may be.

It is within the discretion of the trial court to allow considerable latitude in asking leading questions of young girls who are witnesses for the State. *People* v. *Kratz* (1925), 230 Mich 334. The examination of complainant as conducted by the prosecutor did not violate the rights of defendant.

In retrospect, we are constrained to say that had objection been raised timely during the trial, as it was not, this holding would not have been changed one iota. The jury heard the witnesses, evaluated their credibility based on the testimony offered, and the verdict should not be disturbed.

Affirmed.

WATTS, P. J., and HOLBROOK, J., concurred.