PEOPLE v BLAND

1. CRIMINAL LAW—APPEAL AND ERROR—PRESERVING QUESTION—
   CLEAR INJUSTICE.

   The Court of Appeals may examine the record in a criminal case
   in a search for error reflecting clear injustice notwithstanding
   the fact that no objection was made at trial.

2. CRIMINAL LAW—PRISONS—MEDICAL TREATMENT—CRUEL AND UNU-
   SUAL PUNISHMENT.

   A convicted criminal has a right to medical treatment while in
   prison and denial of such treatment violates the Eighth
   Amendment protection against cruel and unusual punishment;
   the state owes an even higher duty of care to those incarcer-
   ated in its jails who have not as yet been tried.

3. CRIMINAL LAW—CONFIDENTIAL COMMUNICATIONS—PRISONS—MEDI-
   CAL TREATMENT—AGENCY.

   A police officer at a jail, to whom an incarcerated defendant was
   required to make a full disclosure of his ailments in order to
   get medical attention, became the agent of the defendant acting
   as an intermediary with physicians, and the communications
   made to him by the defendant in an effort to obtain medical aid
   were privileged.

4. CRIMINAL LAW—EVIDENCE—CONFIDENTIAL COMMUNICATIONS—PRIS-
   ONS—MEDICAL TREATMENT—PHYSICIAN-PATIENT PRIVILEGE—IM-
   PEACHMENT.

   Oral or written communication made by a defendant incarcerated
   in jail awaiting trial to jail authorities solely for the purpose of
   obtaining medical care to which he is entitled falls within the
   scope of the physician-patient privilege as a confidential com-
   munication and may not be admitted into evidence against the

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[2–4] 60 Am Jur 2d, Penal and Correctional Institutions § 52.
[5] 21 Am Jur 2d, Criminal Law § 225.
   Suppression of evidence by prosecution in criminal case as vitiating
   conviction. 33 ALR2d 1421.

defendant at trial either on the issue of guilt or to impeach his credibility.

5. C<small>RIMINAL</small> L<small>AW</small>—W<small>ITNESSES</small>—C<small>REDIBILITY</small>—S<small>UPPRESSION OF</small> E<small>VI-</small>
   <small>DENCE</small>—F<small>AIR</small> T<small>RIAL.</small>

    A defendant charged with sale of heroin did not receive a fair trial where the prosecution, by its silence, effectively suppressed from the jury the fact that there was an arrangement between two key witnesses against the defendant and the police whereby a charge of sale of heroin against the witnesses would be reduced to a charge of illegal use if they would in turn inform on a number of other persons selling heroin, because this information would have been of immeasurable benefit to the jury in determining the witnesses' credibility.

Appeal from Berrien, Karl Zick, J. Submitted Division 3 December 6, 1973, at Grand Rapids. (Docket No. 15833.) Decided April 29, 1974.

Maurice Bland was convicted of selling heroin without a license. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Ronald J. Taylor,* Prosecuting Attorney, and *Sally M. Zack,* Assistant Prosecuting Attorney, for the people.

*Michael C. Moran,* Assistant State Appellate Defender, for defendant.

Before: T. M. B<small>URNS</small>, P. J., and H<small>OLBROOK</small> and M<small>C</small>G<small>REGOR</small>, JJ.

T. M. B<small>URNS</small>, P. J. On May 20, 1971, a jury found the defendant, Maurice Bland, guilty of selling heroin without a license pursuant to MCLA 335.152; MSA 18.1122. He was sentenced from 20 to 40 years in prison and now appeals.

This action arises out of an alleged illegal sale of heroin that took place on October 23, 1970, in

front of the Fair Avenue Recreation Center in Benton Township, Berrien County, Michigan. On that evening, Fred Johnson, a police informer, posed as a junkie seeking heroin to satisfy his habit. Johnson allegedly asked the defendant if he had any heroin to sell and it was at this time that the alleged sale took place.

After the sale, Johnson went to the police station and turned the heroin over to the police. On the strength of Johnson's subsequent identification of him, defendant was arrested for the illegal sale.

The police did not witness the alleged transaction. The sole witness to the alleged sale was Johnson's nephew, Dorman Johnson, who testified that he saw the final steps of the transaction, but not its initial stage.

Although defendant has raised a number of issues in this Court, we think it necessary to deal with only two, which will be treated in the manner presented below.

Defendant first asserts that the introduction into evidence of his letters to a jail official requesting medical treatment was reversible error.

We note at the outset that defendant's counsel failed to object to the admission of defendant's letters into evidence at trial. In *People v Hicks,* 2 Mich App 461; 140 NW2d 572 (1966), this Court held that we could examine the record in a criminal case, such as this, in a search for error reflecting clear injustice notwithstanding the fact that no objection was made at trial. In exercising this prerogative, we will proceed to examine the matter before us.

While defendant was confined in jail awaiting trial, he became seriously ill. He talked to the part-time jail doctor in an effort to obtain necessary medical treatment, there being no regular

full-time physician at the jail. The jail doctor informed defendant that he was unable to render the type of treatment defendant required, and that if defendant wanted hospital care, he would have to contact the only person authorized to grant such care, one officer Immos, and fully describe his ailments to him.

Defendant then wrote officer Immos letters requesting hospital care. The letters stated defendant was a drug addict presently experiencing withdrawal pains as a result of his addiction and requested medical care.

At trial, defendant was asked whether he had suffered from a drug-related ailment while in jail awaiting trial. After defendant responded that he had not suffered from any such ailment, the prosecutor, in an attempt to impeach defendant's credibility, introduced the letters written by defendant to officer Immos.

Defendant contends that although officer Immos was not a physician, under the circumstances set forth above, officer Immos was acting as the physician's agent, and the letters written to him fall clearly within the scope of the physician-patient privilege as confidential communications. Therefore, defendant maintains that the introduction of these letters into evidence violated his physician-patient privilege under MCLA 600.2157; MSA 27A.2157.

To properly decide this issue, we must consider two subissues: (1) Whether the physician-patient privilege was meant to cover a person in officer Immos' position? (2) If the privilege does apply, will it bar the communications when they are used for impeachment purposes only?

*Did the physician-patient privilege apply to officer Immos?*

The thrust of defendant's argument concerning this question is that since neither a private physician nor the prison doctor could have testified to the contents of the letters if they had been sent to them, the state, through its control of prisoners' lives, cannot subvert the spirit of this privilege by submitting into evidence letters wrongfully obtained which contain information clearly within the scope of the statute.

We agree with defendant that under the facts of the instant case, officer Immos was acting as an agent, and as such falls within the scope of the physician-patient privilege. However, we disagree with defendant's argument that officer Immos was the agent of the hospital physicians. Rather, we feel that under the particular circumstances of this case, he was acting as defendant's agent.

If defendant wanted the medical attention he desired, he had no choice but to fully describe his ailments to officer Immos. Therefore, the officer was acting as an intermediary between the defendant and the hospital doctors. If we do not apply the physician-patient privilege to a situation such as this, the state will have found a means by which it could deny a defendant this privilege by preying upon his vulnerability as a prisoner.

In 58 Am Jur, Witnesses, § 498, p 279, it states:

"When a communication meets all the legal requirements entitling it to be privileged when made directly between an attorney and his client, *it is equally privileged when the communication is made through the client's agent or employee.* In other words, communications between an attorney and the agent of his client are entitled to the same protection from disclosure as those passing directly between the attorney and his client. *The agent as well as the attorney is prohibited from testifying* with respect thereto except by consent of the client, and this is *true even though the communi-*

*cations are made merely with a view to establishing the relation of attorney and client, and securing professional aid for the principal * * * where the client has used a confidential agent for transmission, which, under the circumstances, it was reasonably necessary for him to do, he will be protected against a betrayal of this confidence by such agent* to the same extent as against a betrayal of confidence by his attorney." (Emphasis supplied.)

While the language above relates to the attorney-client privilege, we feel that it is equally applicable in the case of the physician-patient privilege. Here the communication was made to the hospital doctors through defendant's agent, officer Immos, "with a view to establishing the relation" of physician and patient, and "securing professional aid for the principal". Not only was the use of officer Immos "reasonably necessary", it was the only means by which defendant could contact the hospital doctors to receive the medical care he needed. Therefore, defendant should be protected against a betrayal of this confidence by his agent to the same extent as he would be protected against such betrayal by his physician.

While this Court is hesitant to extend the scope of the physician-patient privilege, we feel the situation presented in the instant case merits such extension. Therefore we hold that officer Immos, in occupying the role of an agent for the defendant, falls within the scope of the physician-patient privilege and any communications made by defendant to him in an effort to obtain medical aid were privileged.

*Did the physician-patient privilege bar use of the communications for impeachment purposes only?*

Plaintiff cites *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), in support of its

contention that information that is otherwise privileged can be used to impeach a witness. Plaintiff's reliance is misplaced, for *Harris, supra,* is distinguishable from the present case. In *Harris* the incriminating statements were made voluntarily to the police by the defendant and the Court specifically conditioned its holding on the fact of voluntariness. In the instant case, defendant's incriminating statements cannot be characterized as voluntary, since he had to choose between going through withdrawal without medication or giving incriminating statements to the police. *Harris, supra,* therefore does not apply here.

While these letters were admitted for the limited purpose of impeachment, we find it difficult to believe that the jury kept them in mind solely for impeachment purposes and not as substantive evidence of the crime charged. Defendant had denied not only his participation in the sale of heroin to Johnson but also that he presently was addicted to drugs. The contents of these letters not only showed that defendant was lying, but also strongly implied that he was probably involved in the drug traffic of Benton Township at the time the alleged sale took place. Thus this evidence not only damaged defendant's credibility, but also tended to corroborate the testimony of the prosecution's witnesses. We feel these letters were so highly prejudicial that no limiting instruction given by the trial court could have erased the incriminating nature of their contents from the minds of the jury. Therefore, they should not have been allowed into evidence even for the purposes of impeachment.

The instant case illustrates that the state, whether intentionally or not, was able to condition defendant's power to obtain medical care upon his

willingness to incriminate himself. It is well established that a convicted criminal has a right to medical treatment while in prison and that denial of such treatment violates the Eighth Amendment protections against cruel and unusual punishment. *Blanks v Cunningham,* 409 F2d 220 (CA 4, 1969); *Hirons v Director, Patuxent Institution,* 351 F2d 613 (CA 4, 1965); *Coleman v Johnston,* 247 F2d 273 (CA 7, 1957). Furthermore, the state owes an even higher duty of care to those incarcerated in its jails who have not as yet been tried. *Hamilton v Love,* 328 F Supp 1182, 1191–1194 (ED Ark, 1971). By placing defendant in the situation that it did, the state, through the jail authorities, was allowed to profit from its ability to play off one of defendant's constitutional rights against another. Defendant had to choose between adequate medical care and the Eighth Amendment or silence without medical care and the Fifth Amendment. Such tactics in themselves have long been held to be unconstitutional. *Simmons v United States,* 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968). We find it intolerable that one constitutional right should have to be surrendered in order to assert another. We, therefore, hold that when a defendant incarcerated in jail awaiting trial communicates orally or in writing to jail authorities solely for the purpose of obtaining medical care to which he is entitled, such communications fall within the scope of the physician-patient privilege as confidential communications and may not thereafter be admitted into evidence against him at trial either on the issue of guilt or to impeach his credibility.

Defendant also contends that he was denied a fair trial because the prosecutor failed to disclose relevant evidence relating to the credibility of its key witness.

This evidence related to the fact that both Fred Johnson and Dorman Johnson, who had themselves been charged with the illegal sale of heroin, had worked out an agreement with the Grand Rapids Police whereby the sale charge would be reduced to a single charge of illegal use if the Johnsons would in turn inform on a number of other persons selling heroin. Defendant's counsel did not have this information and while he was able to hint that such an agreement took place when cross-examining these witnesses, he could not conclusively prove the existence of such an agreement.

Whether the prosecution merely failed to obtain this evidence rather than actively suppressed evidence already in hand is of no consequence here. *People v Jordan,* 23 Mich App 375, 388; 178 NW2d 659 (1970). The fact remains that the prosecution, by its silence, effectively suppressed from the jury the fact that there was an arrangement with the witnesses Fred Johnson and Dorman Johnson, which information would have been of immeasurable benefit to the jury in determining their credibility where credibility was such an important issue as in the instant case. It appears that everyone but the defendant and the jury knew of this arrangement. The defendant did not receive a fair trial.

For the reasons set forth above, we reverse and remand for a new trial.

All concurred.