YOUNG v CITY OF ANN ARBOR

Docket No. 52031. Submitted April 7, 1982, at Lansing.—Decided September 21, 1982.

Kenneth L. Young hanged himself while being held in a detention cell at the Ann Arbor Police Station. Mary Lorraine Young, personal representative of the estate of the deceased, brought an action in the Washtenaw Circuit Court against the City of Ann Arbor, its chief of police and other police officers, claiming that the cells in the station were maintained by the city in an unsafe condition and that the individual defendants had been negligent in performing their ministerial duties. At the close of plaintiff's proofs, the trial court, Edward D. Deake, J., directed a verdict in favor of one of the arresting officers, the chief of police, and the City of Ann Arbor. The jury subsequently returned a verdict in favor of the remaining three defendants. A motion for a new trial was denied. Plaintiff appeals. *Held:*

1. The Department of Corrections has authority to supervise, inspect, and promulgate rules governing all local penal facilities, including those designated as jails, local lockups, and holding cells. The evidence indicated the police department had not followed the rules of the Department of Corrections. Plaintiff was entitled to a jury instruction to the effect that evidence of a violation of rules or regulations promulgated pursuant to statutory authority is evidence of negligence.

2. The court erred in directing a verdict in favor of the police chief. As chief of police he was responsible for overseeing and enforcing all policies and practices in the Ann Arbor facility. His testimony at trial indicated that he did not require his staff to enforce the pertinent Department of Corrections regulations. It was incumbent upon the chief to enforce the regulations.

REFERENCES FOR POINTS IN HEADNOTES

[1] 60 Am Jur 2d, Penal and Correctional Institutions § 3.
[2] 57 Am Jur 2d, Negligence §§ 246, 258.
[3, 7] 63 Am Jur 2d, Public Officers and Employees §§ 273, 289 *et seq.*
[4, 6] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 145 *et seq.*
[5] 75 Am Jur 2d, Trial § 343.

This was a ministerial duty of his office, a violation of which is not protected by any official immunity.

3. A dangerous or defective condition in a public building may exist because of improper design, faulty construction, or the absence of safety devices. The question regarding whether a part of a building is dangerous or defective is to be determined in light of the use or purpose that part is intended to serve. The existence of a defect and its relation to the alleged injuries is to be determined by the trier of fact. The applicable statute provides that knowledge of the defect and time to repair shall be conclusively presumed when the defect has existed in a manner as to be readily apparent to an ordinary observer for a period of 90 days or longer before the injury took place. The court erred in taking the issue of the city's liability from the jury.

Reversed and remanded.

R. M. MAHER, J., dissented in part. He believed the trial court properly directed a verdict in favor of the police chief. He would hold that public officers are protected from liability for negligent acts committed while acting within the scope of their employment, whether the acts are discretionary or ministerial.

OPINION OF THE COURT

1. ADMINISTRATIVE LAW — LOCAL JAILS — DEPARTMENT OF CORRECTIONS.

The Department of Corrections has authority to supervise, inspect, and promulgate rules governing all local penal facilities, including those designated as jails, local lockups, and holding cells (MCL 791.262; MSA 28.2322).

2. NEGLIGENCE — RULE VIOLATIONS — JURY INSTRUCTIONS.

Evidence of a violation of rules or regulations promulgated pursuant to statutory authority is evidence of negligence (SJI 12.05).

3. GOVERNMENTAL IMMUNITY — PUBLIC OFFICERS — DISCRETIONARY AND MINISTERIAL ACTS.

The liability of a public officer for tortious acts committed in the scope of his employment is determined by deciding whether the acts of the officer are discretionary or ministerial; discretionary acts are normally protected under governmental immunity, ministerial acts are not; the difference between discretionary and ministerial acts is one of degree; discretionary acts are those of a legislative, executive, or judicial character, and ministerial acts are those where the public officer acts primar-

ily in response to orders and has little decision-making power during the course of performance.

4. GOVERNMENTAL IMMUNITY — DEFECTIVE BUILDING EXCEPTION.

A dangerous or defective condition in a public building may exist because of improper design, faulty construction, or the absence of safety devices; the question regarding whether a part of a building is dangerous or defective is to be determined in light of the use or purpose that part is intended to serve; the existence of a defect and its relation to the alleged injuries is to be determined by the trier of fact (MCL 691.1406; MSA 3.996[106]).

5. JUDGMENTS — DIRECTED VERDICTS — FACT QUESTIONS — APPEAL.

A trial judge may not take the question from a jury when a fact question is presented upon which reasonable persons could reach differing conclusions; directed verdicts are viewed with disfavor and are reviewed in a light most favorable to the nonmoving party with every reasonable inference granted to him and any conflict in evidence resolved in his favor.

6. GOVERNMENTAL IMMUNITY — DEFECTIVE BUILDING EXCEPTION — NOTICE OF DEFECT.

The statute providing for the liability of governmental agencies for bodily injury and property damage resulting from a dangerous or defective condition in a public building provides that knowledge of the defect and time to repair shall be conclusively presumed when the defect has existed in a manner as to be readily apparent to an ordinary observer for a period of 90 days or longer before the injury took place (MCL 691.1406; MSA 3.996[106]).

DISSENT IN PART BY R. M. MAHER, J.

7. GOVERNMENTAL IMMUNITY — PUBLIC OFFICERS — DISCRETIONARY AND MINISTERIAL ACTS.

*Public officers are protected from liability for negligent acts committed while acting within the scope of their employment, whether the acts are discretionary or ministerial.*

*Donald B. Greenspon* and *Fred Surkow,* for plaintiff.

*John K. Van Loon,* Chief Assistant City Attorney, for defendants.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER and K. B. GLASER,* JJ.

M. F. CAVANAGH, P.J. Plaintiff's husband committed suicide by hanging himself with his belt while held in a detention cell at the Ann Arbor Police Station. Plaintiff sued defendants, claiming that the cells in the station were maintained by the city in an unsafe condition and that the individual. defendants had been negligent in performing their ministerial duties. At the close of plaintiff's proofs, the trial court directed a verdict in favor of one of the arresting officers, the chief of police, and the City of Ann Arbor. The jury subsequently returned a verdict in favor of the remaining three defendants. A motion for a new trial having been denied, plaintiff appeals by right from the judgments in favor of defendants.

There are two issues on appeal. First, did the trial court err by holding that the regulations promulgated by the Michigan Department of Corrections (hereinafter "the department") did not apply to the cell in which plaintiff's decedent was confined? Second, did the trial court erroneously direct a verdict of no cause of action on plaintiff's "defect in a public building" claim against the city?

The trial court ruled that the department's rules concerning the removal of belts from prisoners and the frequency of visual supervision of prisoners did not apply to the cell in which plaintiff's decedent was confined. The rules were allowed into evidence only as possible standards against which the jury could determine the reasonableness of the actions of the individual police officers. The basis for the trial court's ruling was its finding that the Ann

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Arbor facility was not a "lockup", as defined in the department's regulations, but rather was a "holding cell", which was not subject to the department's rules.

Under its enabling act, the department is charged with the following responsibilities:

> *"The department shall supervise and inspect local jails* and houses of correction for the purpose of obtaining facts in any manner pertaining to the usefulness and proper management of said penal institutions and of promoting proper, efficient and humane administration thereof, *and shall promulgate rules and standards with relation thereto."* MCL 791.262; MSA 28.2322. (Emphasis added.)

Defendants argue that the statute gives the department authority to promulgate rules governing the practices in jails alone and does not give the department jurisdiction over all local penal facilities. The statute does not define what constitutes a "local jail". The department has defined a "jail" to be:

> "Rule 503. * * *
> "(3) 'Jail' means a facility operated by a unit of local government for the physical detention and correction of persons charged with or convicted of criminal offenses." 1979 AC, R 791.503.

We note this definition differs only slightly from the department's definition of a "lockup", which is:

> "(4) 'Lockup' means a facility operated by a unit of local government used to detain persons charged with or convicted of criminal offenses for a period of less than 48 hours." 1979 AC, R 791.503.

The purpose of the statute authorizing the de-

partment to supervise and inspect local penal institutions is to promote proper, efficient, and humane administration of those facilities by drawing upon the experience and expertise of the department. There is no reason to believe that the Legislature intended such authority to extend only to local facilities which detain charged or convicted persons for more than 48 hours, that which distinguishes a "jail" from a "lockup". We conclude that the Legislature intended to give the department the authority to supervise and inspect all local penal institutions, however specifically designated. We hold that the statutory term "local jail" was meant to encompass any facility operated by a unit of local government for the physical detention of persons charged with or convicted of a criminal offense. This includes, at least, city and county jails and local lockups.

Defendants argue that, even if the department has the authority to promulgate rules for lockups, such authority does not extend to a "holding cell" which is not within a lockup, such as the cell where plaintiff's decedent died. A "holding cell" is defined by the department as:

"* * * a cell used to hold 1 or more persons temporarily while awaiting processing, booking, court appearance or discharge." 1979 AC, R 791.502(4).

Since we conclude that the department has authority to supervise, inspect, and promulgate rules for all local penal facilities, we find it unnecessary to determine whether the Ann Arbor facility was specifically a "lockup" or a "holding cell". The department's rules clearly apply to a lockup and to a holding cell within a lockup. See 1979 AC, R 791.511(1) and R 791.557. It would be inconsistent to hold that the department's rules apply to a

holding cell within a lockup, as specifically defined by the rules, but not to a holding cell within a local penal facility which does not meet the specific definition of a jail or lockup. Inmates confined to a holding cell should be given the same rights and protections regardless of the label placed on the holding facility.

Furthermore, if the department's rules mandatorily apply only to lockups, and not to holding cells which are not contained in lockups, then those persons who are merely detained temporarily while awaiting processing would be afforded less protection than inmates convicted of criminal offenses who are confined in lockups. We decline to give legal sanction to defendants' "holding cell" versus "lockup" exercise in verbal gymnastics when the result would be to deny equal care to those citizens who, if anything, are entitled to greater protection. It has repeatedly been held that the state owes a higher degree of care to those incarcerated in its jails who have not been tried than to those who have already been convicted of criminal offenses. *People v Bland,* 52 Mich App 649, 656; 218 NW2d 56 (1974).

In light of our finding that the Ann Arbor facility was required to follow the department's rules, the trial court erred in denying plaintiff's request to instruct the jury on the mandatory applicability of the supervisory rules which required belts to be removed from inmates and visual inspection of inmates at least once every 60 minutes. See 1979 AC, R 791.632 and R 791.635. The testimony presented at trial clearly showed that defendants did not comply with either of these two rules. Plaintiff was entitled to a jury instruction that failure to comply with these rules was evidence of negligence. See SJI 12.05; GCR

1963, 516.6(2); *Javis v Ypsilanti Bd of Ed,* 393 Mich 689, 697; 227 NW2d 543 (1975).

In addition, we hold that the trial court erred in directing a verdict in favor of defendant Police Chief Walter Krasny. As chief of police this defendant was responsible for overseeing and enforcing all policies and practices in the Ann Arbor facility. His testimony at trial indicated that he did not require his staff to enforce the pertinent department regulations. Since we find that the Ann Arbor facility was required to follow the department's rules, it was incumbent upon defendant Krasny to enforce the regulations. This was a ministerial duty of his office, a violation of which is not protected by any official immunity. *Walkowski v Macomb County Sheriff,* 64 Mich App 460; 236 NW2d 516 (1975). As this Court said in *Antkiewicz v Motorists Mutual Ins Co,* 91 Mich App 389, 397; 283 NW2d 749 (1979), *vacated on other grounds* 407 Mich 936 (1979):

"The liability of a public officer for tortious acts committed in the scope of his employment is determined by deciding whether the acts of the officer are 'discretionary' or 'ministerial'. Discretionary acts are normally protected under governmental immunity; ministerial acts are not. Prosser, Torts (4th ed), § 132, pp 989-990.

"The difference between discretionary and ministerial acts is one of degree. Discretionary acts are those of a legislative, executive, or judicial character. * * *

"Ministerial acts are those where the public officer has little decision-making power during the course of performance; the officer's acts are primarily in response to orders." (Citations and footnote omitted.)

Therefore, defendant Krasny's potential negligence in failing to require his subordinates to follow the

department's rules and regulations is an issue that properly should have been determined by the jury.

Plaintiff also alleges that the trial court erroneously directed a verdict of no cause of action on plaintiff's "defect in a public building" claim against the city. We find the trial court erred in ruling as a matter of law that the bars on the cell-door window did not constitute a defect in a public building under the statute.

A statutory exception to governmental immunity provides:

"Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building, if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place." MCL 691.1406; MSA 3.996(106).

In *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), a majority of the Michigan Supreme Court agreed on several principles governing the application of the "defect in a public building" exception. A dangerous or defective condition in a public building may exist because of improper design, faulty construction, or the absence of safety devices. The question regarding whether a part of a building is dangerous or defective is to be determined in light of the use or

purpose that part is intended to serve. Furthermore, the existence of a defect and its relation to the alleged injuries is to be determined by the trier of fact. *Bush, supra,* 730-732. See also *Lockaby v Wayne County,* 406 Mich 65, 77; 276 NW2d 1 (1979). .

Defendants cite *Bush* in support of their argument that, since the intended function of the cell in which plaintiff's decedent was confined was to hold sane individuals for a short period of time pending processing, the cell was not defective for its intended use; city police policy directed that individuals deemed to have mental problems were to be confined elsewhere. Plaintiff counters this argument, also relying on *Bush,* by claiming that the cell lacked proper safety devices and was improperly designed. Plaintiff relies on the testimony of defendant Chief of Police Krasny who stated that, had the window in the cell door retained its original design, which did not include the presence of bars, such a suicide could not have happened.

We begin by noting that directed verdicts are viewed with disfavor and all the facts must be reviewed in the light most favorable to the non-moving party, with every reasonable inference and conflict in evidence being resolved in his or her favor. *Cole v Rife,* 77 Mich App 545, 549; 258 NW2d 555 (1977); *Cody v Marcel Electric Co,* 71 Mich App 714, 717; 248 NW2d 663 (1976). We find that the clear mandate of *Bush* provides that whether a particular building is dangerous or defective in any given situation is a question of fact to be decided by the trier of fact. *Bush, supra,* 732. Given the very real possibility that arresting officers and jailers are often unable to accurately assess an arrested person's mental state, defen-

dants' bare assertion that the intended function of
the cell here involved was to hold only sane per-
sons for a short period of time does not preclude
jury consideration of the defective public building
exception. In directing a verdict in favor of the
defendant City of Ann Arbor, the trial court im-
properly took this issue from the jury.

In moving for a directed verdict, the defendant
City of Ann Arbor also had claimed that plaintiff
had not established that it had notice of the al-
leged defect. The "defective condition in a public
building" statutory section provides that knowl-
edge of the defect and time to repair shall be
conclusively presumed when the defect has existed
in a manner as to be readily apparent to an
ordinary observer for a period of 90 days or longer
before the injury took place. MCL 691.1406; MSA
3.996(106). In asserting lack of notice of the al-
leged defect, defendant relies upon status reports
from the department which stated that defen-
dant's building was in excellent structural condi-
tion, a reliance of convenience apparently in light
of defendant's simultaneous argument that the
department has no authority over its facility.

We hold that the issue of whether the defendant
had knowledge of the alleged defect and failed to
take action reasonably necessary to protect those
confined in its facility was a question of fact for
the jury. See *Bush, supra,* 732. Thus, the trial
court also erred in directing a verdict for the
defendant City of Ann Arbor on the ground of lack
of notice of the alleged defect.

Reversed and remanded for a new trial.

K. B. Glaser, J., concurred.

R. M. Maher, J. *(dissenting in part).* I dissent
from the majority's holding that the trial court

erred in directing a verdict in favor of Police Chief
Krasny. The proper test of governmental immu-
nity does not rest on the discretionary-ministerial
distinction. Rather, "the proper test to apply is
merely whether the [employees] were acting
within the scope of their employment. If so, they
cannot be held liable." *Gaston v Becker,* 111 Mich
App 692, 698; 314 NW2d 728 (1981). See also
*Shwary v Cranetrol Corp,* 119 Mich App 736; —
NW2d — (1982). Because the plaintiff does not
contend that Police Chief Krasny's acts were *ultra
vires* or outside the scope of his employment,
plaintiff has failed to allege sufficient facts to show
that Chief Krasny was not protected by govern-
mental immunity. The trial court did not err in
directing a verdict in favor of Chief Krasny. See
*Shwary, supra.*