## WILLIAMS v CUNNINGHAM DRUG STORES, INC

Docket No. 75663. Submitted December 11, 1984, at Detroit.—Decided October 7, 1985. Leave to appeal applied for.

Willie Williams was shopping in a Cunningham Drug Store when an armed robbery of the store took place. After the robbery, the robber ran out of the store. Williams, allegedly in a state of panic, ran out directly behind the robber, who turned and shot Williams. Williams and his wife, Cleva Williams, subsequently filed suit against Cunningham Drug Stores, Inc., in Wayne Circuit Court alleging that defendant had breached its duty to exercise reasonable care for the safety of its patrons by failing to provide an adequate number of armed and visible security guards and by failing to intercede on Mr. Williams's behalf after having notice that an armed robbery was in progress. The court, Michael J. Connor, J., granted defendant's motion for a directed verdict on the ground that defendant had no duty to protect Mr. Williams from the unforeseeable acts of a third person. Plaintiffs appealed. *Held:*

As a matter of law defendant did not have a duty to provide police protection to its patrons. Furthermore, defendant's failure to provide a security guard, whether uniformed and armed or not, did not create the risk that plaintiff would run from the store in a state of panic on the heels of the fleeing robber and thereafter be shot. Thus, whether phrased in terms of duty or proximate cause, defendant was not liable for plaintiff's injuries. A directed verict by the trial court was appropriate.

Affirmed.

1. APPEAL — DIRECTED VERDICTS.

An appellate court when reviewing the grant of a directed verdict

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Trial §§ 463 *et seq.*

Power of court sitting as trier of facts to dismiss at close of plaintiff's evidence, notwithstanding plaintiff has made out prima facie case. 55 ALR3d 272.

[2] Am Jur 2d, Am Jur 2d, Premises Liability §§ 39-50, 62-68.

Modern status of rules conditioning land owner's liability upon status of injured party as invitee, licensee, or trespasser. 22 ALR4th 294.

[3] Am Jur 2d, Premises Liability §§ 25, 26.

must view the evidence presented in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor; a trial court's grant of a directed verdict in favor of a defendant at the close of the plaintiff's proofs will be reversed if the evidence, when viewed in this manner, establishes a prima facie case.

2. NEGLIGENCE — BUSINESS INVITEES — DUTY OF REASONABLE CARE — STANDARD OF CARE — JURY QUESTION — PUBLIC POLICY.

A person conducting a business undertakes certain duties regarding business invitees, one of which is the duty to use reasonable care for the safety of an invitee; the nature of that duty, *i.e.,* ascertaining what constitutes reasonable care under the circumstances, is generally a question for the jury but becomes a question for the court where overriding public policy concerns arise.

3. NEGLIGENCE — BUSINESS INVITEES — DUTY OF CARE — POLICE PROTECTION.

Commercial businesses assume the duty of reasonable care to business invitees but this duty does not extend to providing police protection against criminal conduct of third parties.

*David Franks,* for plaintiffs.

*Beverly J. White,* and *Barbier, Goulet & Petersmarck, P.C.* (by *Thomas H. Hill),* for defendant.

Before: GRIBBS, P.J., and MacKENZIE and H. R. GAGE,* JJ.

MacKENZIE, J. On May 4, 1979, an armed robbery occurred at a Cunningham Drug Store located in a shopping center at the corner of Grand River and Oakman Boulevard in the City of Detroit. At the time of the robbery, plaintiff Willie Williams was shopping near the front of defendant's store. In the confusion following the announcement of the robbery, Mr. Williams ran out of the store directly behind the fleeing robber. Once outside the store, the robber turned and fired

* Circuit judge, sitting on the Court of Appeals by assignment.

his gun, hitting Mr. Williams in the midsection. The record does not establish whether Williams, when shot, was still on defendant's premises; the robber was not.

As a result of the shooting, Mr. Williams and his wife filed a complaint against defendant wherein it was alleged that defendant had breached its duty to exercise reasonable care for the safety of its patrons. Specifically, plaintiffs alleged that defendant failed to provide an adequate number of armed and visible security guards and, further, failed to intercede on Mr. Williams's behalf after having notice that an armed robbery was in progress. At the close of plaintiffs' proofs defendant moved for a directed verdict pursuant to GCR 1963, 515.1 on the basis that defendant had no duty to protect Williams from the unforeseeable acts of a third person. The court found that as a matter of law Mr. Williams's actions were unforeseeable and accordingly granted defendant's motion. Plaintiffs appeal as of right and contend that the trial court erred by granting defendant's motion for a directed verdict.

When reviewing the grant of a directed verdict, an appellate court must view the evidence presented in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor. A trial court's grant of a directed verdict in favor of a defendant at the close of the plaintiff's proofs will be reversed if the evidence, when viewed in this manner, establishes a prima facie case. *Cody v Marcel Electric Co,* 71 Mich App 714, 717; 248 NW2d 663 (1976), *lv den* 399 Mich 851 (1977); *Ransford v The Detroit Edison Co,* 124 Mich App 537, 542; 335 NW2d 211 (1983).

The trial court concluded that Mr. Williams left the store in pursuit of the holdup man and that

his actions were unforeseeable. After viewing the facts in a light most favorable to plaintiffs, we find that Mr. Williams ran from the store without any intention to pursue the robber. Mr. Williams's own testimony indicated that he ran out of the store in panic, not knowing that the individual he was running behind was in fact the robber. Nevertheless, we find that Williams's motivation in fleeing the store is not dispositive here.

Defendant, in conducting its business, undertook the duty to use care for the safety of its business invitees. See *Preston v Sleziak,* 383 Mich 442, 447; 175 NW2d 759 (1970); *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), *reh den* 401 Mich 951 (1977). The nature of that duty, *i.e.,* ascertaining what constitutes reasonable care under the circumstances, is generally a question for the jury. *Moning, supra,* p 438. Defining the scope or extent of that duty, however, becomes a question for the court where overriding public policy concerns arise. *Id.* See also *McNeal v Henry,* 82 Mich App 88; 266 NW2d 469 (1978). *Cf. Earle v Colonial Theatre Co,* 82 Mich App 54; 266 NW2d 466 (1978), *lv den* 403 Mich 816 (1978), Judge BRENNAN dissenting. Plaintiffs' contention is that defendant had a duty to deter and to intercede in robberies by providing armed and uniformed security guards within the store. We decline to so extend defendant's duty of reasonable care and find that as a matter of law defendant cannot be held responsible for providing that degree of "protection" which plaintiffs claim was due.

Essentially, the duty plaintiffs advance is the duty to provide police protection. Neither the Legislature nor the constitution has established public policy requiring law enforcement responsibilities to be extended to commercial businesses. We, therefore, decline to extend that obligation to pri-

vate citizens or enterprises. Privately hired security guards simply lack the authority and the training to effectively and safely defuse the potentially volatile situation which an armed robbery represents. Moreover, testimony adduced in this case strongly suggests that the broad duty plaintiffs seek to establish would do nothing to prevent injuries such as those suffered by Mr. Williams or, worse, would actually increase the risk of harm to store patrons. Testimony indicated that in the past the presence of armed and uniformed security guards did not deter robberies. Testimony also established that, if armed guards took affirmative steps to prevent or intercede in a robbery, the likelihood of exchange of gunfire would arise and patrons would be exposed to an increased risk of harm. Finally, we note that holding businessmen, especially those in "high crime areas", responsible for policing the criminal conduct of third parties carries the economic potential for driving store owners out of business. See *McNeal, surpa,* p 90, fn 1.

We further note the problems of proximate cause raised on these facts. Proximate cause is a question for the court which has been characterized as "a policy question often indistinguishable from the duty question". *Moning, supra,* p 438. The inquiry in this case is whether the failure to provide armed and uniformed security guards is "so significant and important a cause [of loss resulting from such failure] that the defendant should be legally responsible". *Id.* Here, defendant's failure to provide a security guard, whether uniformed and armed or not, did not create the risk that Mr. Williams would run from the store in a state of panic on the heels of the fleeing robber and thereafter be shot. *Moning, supra,* pp 440-442. Mr. Williams's conduct was not a "normal

consequence of [the] situation" created by defendant's alleged failures. *Moning, supra,* p 442, quoting 2 Restatement Torts, 2d, § 443, p 472. See 2 Restatement, *supra,* § 445, p 475. Thus, whether phrased in terms of duty or proximate cause, we find defendant not liable for Mr. Williams's injuries. Accordingly, a directed verdict by the trial court was appropriate.

Affirmed.