YOUNG v BARKER

Docket No. 76767. Submitted May 6, 1986, at Detroit. Decided February 20, 1987. Leave to appeal applied for.

Darlene Young brought an action in the Wayne Circuit Court against Mark Barker, Robert Dossette, S. Klebanowski, the Cities of Detroit and Sterling Heights, Macomb County and others for injuries arising out of her arrest on July 31, 1978. Plaintiff advanced claims of negligence, gross negligence, false imprisonment, malicious prosecution, constitutional rights violations, assault and battery, intentional infliction of mental distress, invasion of privacy and abuse of process. The facts indicate that Darlene Young and Wilda Watkins were stopped by state troopers for a traffic offense. Darlene Young, the driver, did not have an operator's license or the car's registration. Darlene Young then falsely identified herself as Wilda Watkins, giving the troopers Watkins' driver's license. Following a LEIN check, Young was told that there were outstanding

REFERENCES

Am Jur 2d, Appeal and Error §§ 545 et seq.; 601, 602.
Am Jur 2d, Arrest §§ 80, 81.
Am Jur 2d, Civil Rights § 16.
Am Jur 2d, False Imprisonment §§ 5 et seq..
Am Jur 2d, Malicious Prosecution §§ 6 et seq..
Am Jur 2d, Negligence §§ 33 et seq..
Actionability of malicious prosecution under 42 USCS § 1983. 79 ALR Fed 896.
When does police officer's use of force during arrest become so excessive as to constitute violation of constitutional rights, imposing liability under Federal Civil Rights Act of 1871 (42 USCS § 1983). 60 ALR Fed 204.
Construction and application of Civil Rights Attorney's Fees Awards Act of 1976 (amending 42 USCS § 1988), providing that court may allow prevailing party, other than United States, reasonable attorney's fee in certain civil rights actions. 43 ALR Fed 243.
Police action in connection with arrest as violation of Civil Rights Act, 42 USCS § 1983. 1 ALR Fed 519.
See also the annotations in the Index to Annotations under Abuse of Process; Appeal and Error; Direction of Verdict; Degree and Standard of Care; Governmental Immunity or Privilege; Privacy.

warrants on the Watkins name. Young then gave the troopers her correct name. Another LEIN check disclosed outstanding warrants in the name of Darlene Young. The passenger identified herself to the troopers as Mary Staples and Young did not inform the troopers that her passenger was, in fact, Wilda Watkins. Plaintiff testified that she was taken to State Police Headquarters, then to a City of Detroit facility, then to Sterling Heights, where she was identified as Wilda Watkins. When she was arraigned in Sterling Heights, she informed the judge of her correct identity, but the judge held her over. At a second court hearing on August 14, 1978, bond was set and defendant was placed in the Macomb County Jail. Young remained in jail until the charges were dismissed in October, 1978. On September 19, 1978, Young's bond was reduced to a personal bond, but she was taken to Roseville for charges under the name of Shirley Williams. She pled guilty to a larceny charge and was sentenced to sixty days in jail and given credit for time served under the Wilda Watkins warrants. Young did not present her birth certificate, which was at her home. Young has used at least sixteen different names in the past. Darlene Young appeals from certain orders of disposition regarding this case: (1) Orders by Arthur M. Bowman, J., granting summary judgment as to all counts to defendants City of Detroit, S. Klebanowski and William Hart and as to the negligence counts against defendants Barker, Sterling Heights, Blanchard, Foltz and Facemyer; (2) An order by Thomas Roumell, J., dismissing all of the remaining counts against defendant Barker upon a directed verdict at the close of Young's opening statement at trial; and (3) An order by Thomas Roumell, J., dismissing all the remaining counts against defendants Sterling Heights, Blanchard, Foltz and Facemyer upon a directed verdict at the close of Young's proofs.

The Court of Appeals *held:*

1. The trial court did not err in granting a summary judgment dismissing the negligence claims against defendant Barker and granting defendant Barker a directed verdict on the remaining counts at the close of plaintiff's opening statement.

2. Young's claim of invasion of privacy was properly dismissed. There was no basis for Young's constitutional rights claims. There was no merit to Young's battery claim.

3. The City of Detroit is immune from liability for any injuries sustained as a result of the alleged tortious performance of its employee, defendant Klebanowski.

4. The trial court correctly determined that the negligence or

intentional tort claims against defendant Klebanowski were completely baseless.

5. The trial court correctly granted summary judgment to defendants Sterling Heights, Blanchard, Facemyer and Foltz on the negligence claims and correctly granted a directed verdict for those defendants at the close of Young's proofs as to the remaining intentional tort claims.

6. Defendants were entitled to attorney fees under 42 USC 1988. The granting of such an award was not error, however, it was inappropriate to grant defendants $83 for process serving and witness fees because defendants failed to comply with GCR 1963, 526.

7. The trial court properly denied plaintiff's motion to amend her complaint on the first day of trial.

8. Young did not preserve for appellate review an issue regarding the admission of evidence of her conviction in Roseville. Consideration of such issue was determined not to be necessary to the proper determination of this case.

Affirmed. The $83 costs awarded for process serving and witness fees is vacated.

1. NEGLIGENCE — ACTIONS.

A plaintiff, to prove negligence, must prove the existence of a legal duty which the defendant owes to the plaintiff, that the defendant failed to exercise ordinary care in performing the duty and that the plaintiff suffered damages proximately resulting from the defendant's negligence.

2. MOTIONS AND ORDERS — DIRECTED VERDICT.

A directed verdict after an opening statement is a limited and disfavored action which is only proper where an opening statement, in addition to the pleadings, fails to establish a plaintiff's right to recover.

3. TORTS — FALSE ARREST.

A plaintiff, to prevail on a claim for false arrest or imprisonment, must show that the arrest was not legal, that it was not based on probable cause.

4. TORTS — MALICIOUS PROSECUTION.

A plaintiff, to prevail on a claim for malicious prosecution, must prove that prior proceedings were terminated in favor of the present plaintiff, that there was an absence of probable cause for the proceedings, that malice, defined as a purpose other than that of securing the proper adjudication of the claim, existed and that a special injury flowed directly from the prior proceeding.

5. TORTS — ABUSE OF PROCESS.

> A plaintiff, to prevail on a claim of abuse of process, must plead and prove an ulterior purpose and act in the use of process that is improper in the regular prosecution of the proceeding; the plaintiff must allege with specificity an act which itself corroborates the ulterior motive.

6. PRIVACY — INVASION OF PRIVACY — FALSE LIGHT.

> A plaintiff who brings a false light invasion of privacy claim must allege that the plaintiff was placed in a false light in the public eye; the oral communication must be broadcast to the public in general or publicized to a large number of people.

7. ARREST — USE OF FORCE — ASSAULT AND BATTERY — STANDARD JURY INSTRUCTIONS.

> An arresting officer may use such force as is reasonably necessary to effect a lawful arrest (SJI2d 115.09).

8. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTIONS.

> All governmental agencies are immune from tort liability when engaged in the exercise or discharge of a governmental function; a governmental function is any activity which is expressly or impliedly mandated or authorized by constitution, statute or other law (MCL 691.1407; MSA 3.996[107]).

9. COSTS — ATTORNEY FEES — UNITED STATES CODE — COURT RULES.

> Attorney fees under 42 USC 1988 are different and independent from costs awarded after the conclusion of a lawsuit (42 USC 1983; 42 USC 1988; GCR 1963, 526).

10. COSTS — ATTORNEY FEES — CIVIL RIGHTS ACTIONS.

> A prevailing plaintiff should ordinarily recover attorney fees unless special circumstances would make such an award unjust; the prevailing defendant in a civil rights case may recover attorney fees only if the trial court, in its discretion, determines that the suit was vexatious, frivolous or brought to harass.

11. EVIDENCE — APPEAL — PRESERVING QUESTION — RULES OF EVIDENCE.

> An objection to the admission of evidence must be made before error can be predicated upon the ruling to admit such evidence (MRE 103).

12. APPEAL — PRESERVING QUESTION.

> The Court of Appeals generally will not address issues which have not been preserved for appellate review; however, this rule is not absolute and departure may be made where consid-

eration of the claim is necessary to a proper determination of the case.

*Gregory T. Zalecki,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Ronald W. Emery,* Assistant Attorney General, for Mark Barker.

*Donald Pailen,* Corporation Counsel, and *William L. Woodard* and *Linda D. Fegins,* Assistant Corporation Counsel, for the City of Detroit, Officer Klebanowski and Police Chief Hart.

*Tyler & Thayer, P.C.* (by *William J. Liedel*), for the City of Sterling Heights, Gary Blanchard, Detective Facemyer and Maurice Foltz.

Before: BRONSON, P.J., and GRIBBS and M. E. CLEMENTS,* JJ.

PER CURIAM. Plaintiff, Darlene Young, filed suit against defendants for alleged injuries arising out of her arrest of July 31, 1978. Plaintiff advanced claims of negligence, gross negligence, false imprisonment, malicious prosecution, constitutional rights violations, assault and battery, intentional infliction of mental distress, invasion of privacy and abuse of process. Certain orders of disposition are presently on appeal before this Court: (1) the trial court's dismissal of all counts against the City of Detroit, Police Chief Hart and Officer Klebanowski and the negligence counts against defendants Barker, the City of Sterling Heights, Blanchard, Foltz and Facemyer upon motion for summary judgment on March 4, 1983; (2) the trial court's dismissal of all remaining counts against defendant Barker upon a directed verdict at the close of

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff's opening statement at trial; and (3) the trial court's dismissal of all remaining counts against defendants City of Sterling Heights, Blanchard, Foltz and Facemyer upon a directed verdict at the close of plaintiff's proofs. Plaintiff appeals as of right.

This case arises out of the arrest of plaintiff on July 31, 1978. On that date, plaintiff and Wilda Watkins were stopped by State Troopers Mark Barker and Robert Dossetto on an expressway in Detroit at 12:00 or 1:00 A.M. Plaintiff, who was driving, was stopped on a traffic offense: the license plate on the car was wired on. Plaintiff did not have an operator's license and she was unable to show the troopers the car's registration. Plaintiff then falsely identified herself as Wilda Watkins, giving the troopers Watkins' driver's license. The troopers ran a LEIN check and told plaintiff that there were outstanding warrants on the Watkins name. Plaintiff then gave the troopers her correct name, at which point the troopers ran another LEIN check and discovered that there were outstanding warrants in plaintiff's correct name, Darlene Young, for loitering, failure to appear in court and prostitution. Plaintiff's passenger identified herself to the troopers as Mary Staples and plaintiff did not inform the troopers that her passenger was, in fact, Wilda Watkins.

Plaintiff testified that she thought she was taken to State Police Headquarters and later to a City of Detroit facility. When she was fingerprinted, she signed the card as Darlene Young. She testified that the troopers never mistreated her or used physical force against her. Next, she was taken to Sterling Heights and identified as Wilda Watkins (even though she told police that she was in fact Darlene Young). When she was arraigned, she informed the judge of her correct identity, but the

judge held her over. At a second court hearing, bond was set and defendant was placed in the Macomb County Jail. Defendant remained in jail until the charges were dismissed in October, 1978.

Defendant further testified that a Detroit police matron knew who she was. She stated that she was allowed to make a phone call while at the Detroit facility and that she called her boyfriend. When she was taken to Sterling Heights she was again given the opportunity to make a phone call. She was represented by counsel at the second court hearing on August 14. Her attorney asked for an adjournment of the preliminary examination and requested a lineup. On September 19, her bond was reduced to a personal bond, but she was taken to Roseville for charges under the name of Shirley Williams. She pled guilty to a larceny charge and was sentenced to sixty-three days in jail. She had a birth certificate at her home which could have been presented but which plaintiff did not produce. Plaintiff has used at least sixteen different names in the past.

Plaintiff brought counts of negligence and gross negligence, false imprisonment, malicious prosecution, constitutional rights violations, assault and battery, intentional infliction of mental distress, invasion of the right to privacy and abuse of process against all of the named defendants. State Trooper Barker's partner at the arrest, Robert Dossetto, was not timely served with a summons and complaint and, therefore, is not a party on appeal. Defendant Gerald Hough was dismissed as a party upon stipulation.

On March 4, 1983, three separate motions for summary judgment were brought. Defendant Barker argued that plaintiff was arrested for driving without a license, driving with an improperly fixed license plate and with no registration and,

therefore, he acted within the scope of his employment in arresting her. Barker argued that governmental immunity applied to the negligence and gross negligence counts. As to the intentional tort claims, Barker argued that there was probable cause to arrest and that he was exercising his privilege to so act as long as he was exercising the legal right to arrest in a proper way. Plaintiff countered by arguing that although Barker had a right to pull plaintiff over, he intentionally misidentified plaintiff to the Detroit Police Department. She argued that there was a question of fact as to whether Barker intentionally misidentified her to punish her for falsely identifying herself.

The City of Detroit defendants, including the city, Chief Hart and Officer Klebanowski, requested summary judgment, arguing that when plaintiff was booked, Klebanowski relied upon the information given by the arresting officer as proper department procedure. Further, plaintiff was booked under the name Darlene Young, also known as Wilda Watkins, and released the next morning to the Sterling Heights Police Department. Plaintiff basically countered by arguing that Officer Klebanowski intentionally misidentified plaintiff or failed to investigate her claim that she was not Wilda Watkins.

The Sterling Heights defendants argued that they were immune because the city and the chief of police are entitled to absolute immunity and the officers are immune because of the district court's actions at the arraignment when plaintiff informed the court that she was not Wilda Watkins. The Sterling Heights police had probable cause under the circumstances to represent to the court that plaintiff was in fact Wilda Watkins and the court's decision not to release her took away the Sterling Heights defendants' power. Plaintiff ar-

gued that the Sterling Heights detectives failed to investigate plaintiff's claim of mistaken identity which could have been established by a fingerprint check or handwriting analysis. According to plaintiff, they had knowledge that they had the wrong person. However, plaintiff did concede at the motion for summary judgment hearing that the municipalities were immune as to the negligence counts.

The trial court dismissed all counts against the City of Detroit, William Hart, and Officer Klebanowski. The court granted summary judgment to defendant Barker as to the negligence counts, finding that Barker made a legal arrest. However, the court denied summary judgment as to the intentional tort counts, finding that there might be a question of fact as to the intentional tort claims.

Following plaintiff's opening statement at trial, all the remaining defendants moved for a directed verdict. Defendant Barker argued that on the facts set forth in plaintiff's opening statement Barker had probable cause to arrest plaintiff and that the privilege of making a lawful arrest is a defense against plaintiff's remaining claims. The Sterling Heights defendants argued that a directed verdict should be granted because once plaintiff was taken before the district court for arraignment their liability was cut off.

The trial court granted defendant Barker's motion for directed verdict upon the culmination of plaintiff's opening statement and denied it as to the Sterling Heights defendants. However, after the close of plaintiff's proofs, a directed verdict for the remaining defendants was granted on a finding that there was no unlawful restraint and that the entire incident was triggered by plaintiff's own statements and conduct. The court found that the officers' actions were supported by probable cause.

We first review plaintiff's claim that the trial court erred in dismissing the negligence claims against State Trooper Barker upon motion for summary judgment. The trial court did not specify in either its order or at the hearing upon which subsection of the summary judgment rule judgment was granted. Our review of the proceedings leads us to conclude that the trial court did not dismiss the negligence claims against Barker on the basis of governmental immunity, but rather on the basis that the court found no negligence. We have determined that summary judgment was properly granted under GCR 1963, 117.2(3), now MCR 2.116(C)(10), no genuine issue of material fact, and that from a careful reading of the trial court's decision this was in fact the basis of the court's order. The trial court stated that the question was whether Barker put the plaintiff legally into custody. The court found that Barker did properly and legally arrest plaintiff under either her correct name, Darlene Young, or the name she had originally given, Wilda Watkins.

A motion for summary judgment based on the absence of a genuine issue of material fact tests whether there is factual support for the claim. In ruling on a motion for summary judgment, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence then available to it. The court must give the benefit of any reasonable doubt to the party opposing the motion and must be satisfied that it is impossible for the claim to be supported at trial because of some deficiency which could not be overcome. *Kortas v Thunderbowl & Lounge,* 120 Mich App 84, 86; 327 NW2d 401 (1982).

To prove negligence, a plaintiff must prove the existence of a legal duty which a defendant owes to the plaintiff, that the defendant failed to exer-

cise ordinary care in performing the duty and that the plaintiff suffered damages proximately resulting from the defendant's negligence. *May v Parke, Davis & Co,* 142 Mich App 404, 411; 370 NW2d 371 (1985), lv den 424 Mich 878 (1986). Here, Barker had the authority to arrest plaintiff on more than one basis: driving without a valid driver's license, MCL 257.301; MSA 9.2001; operating a vehicle without a valid registration certificate, MCL 257.255; MSA 9.1955; failure to properly attach license plates, MCL 257.225; MSA 9.1925; as well as on the basis that he received positive information that another police officer held a warrant for plaintiff's arrest, MCL 764.15(1); MSA 28.874(1). There were warrants under both names that plaintiff gave to Trooper Barker in addition to the fact that she had committed several traffic offenses. As such, Barker had the authority and duty to arrest plaintiff.

Plaintiff claims that defendant Barker negligently or intentionally misidentified her to the Detroit police upon booking. However, her testimony clearly indicates that when she was booked and arrested she was listed as Darlene Young, also known as Wilda Watkins. We find no negligence in the fact that the troopers did not know what to believe when plaintiff presented no proof about her identity except her word. We think the police took the correct course of action. At this point, Barker's involvement ended. Even giving every reasonable doubt to plaintiff, we conclude that summary judgment was properly granted for Barker. Plaintiff did not prove or allege that Barker ever arrested her illegally or that the procedure he employed was improper.

We next consider whether the court erred in granting a directed verdict to Barker on the remaining counts at the close of plaintiff's opening

statement. We recognize that a directed verdict after an opening statement is a limited and disfavored action, which is only proper where an opening statement, in addition to the pleadings, fails to establish a plaintiff's right to recover. *Ambrose v Detroit Edison Co,* 380 Mich 445, 453-455; 157 NW2d 232 (1968). In her opening statement, plaintiff acknowledged that on July 31, 1978, she was driving without a license and that when she was stopped she identified herself as Wilda Watkins. Further, plaintiff acknowledged that there were outstanding warrants under both the names of Darlene Young and Wilda Watkins. However, plaintiff contended that Barker was in error in continuing to identify her as Watkins because she gave him corroborating evidence, that is a name, address and birth date. We conclude that the trial court did correctly grant the directed verdict after plaintiff's opening statement because plaintiff failed to establish her right to recover.

First of all, plaintiff failed to establish a claim for false arrest or imprisonment. To prevail on such a claim, a plaintiff must show that the arrest was not legal, that it was not based on probable cause. *Brewer v Perrin,* 132 Mich App 520, 527; 349 NW2d 198 (1984). Here, plaintiff admitted in her opening statement that she was driving without a license, that she misidentified herself and that there were outstanding warrants in her own name. Clearly, Barker had probable cause to arrest. Even if Barker had believed that Darlene Young was plaintiff's correct name, it was reasonable to believe that she could have used the name Wilda Watkins before and been involved in the check cashing scheme for which the warrants were issued. We therefore agree with the trial court that plaintiff failed to establish a right to recover under a false arrest claim.

Further, the directed verdict was properly granted on the malicious prosecution claim. To succeed on a tort action for malicious prosecution, it must be proven that prior proceedings terminated in favor of the present plaintiff, that there was an absence of probable cause for the proceedings, that malice, defined as a purpose other than that of securing the proper adjudication of the claim, existed and that a special injury flowed directly from the prior proceeding. *Young v Motor City Apartments,* 133 Mich App 671, 675; 350 NW2d 790 (1984). As noted above, Barker had probable cause to arrest plaintiff. The malicious prosecution claim therefore must fail.

Next, we find that the court properly granted the directed verdict on the abuse of process claim. To recover under a theory of an abuse of process, a plaintiff must plead and prove an ulterior purpose and act in the use of process that is improper in the regular prosecution of the proceeding. *Young, supra,* p 678. A plaintiff must allege with specificity an act which itself corroborates the ulterior motive. *Id.,* p 681. Here, plaintiff alleged no act which would corroborate any allegation of an ulterior motive. The only possible act alleged by plaintiff was that Barker "rolled his eyes and joked." We find this act clearly insufficient.

Further, we conclude that the court properly directed the verdict for Barker on the intentional infliction of mental distress claim. Viewing the circumstances involved in this case, we see no evidence of conduct by Barker which reasonably could be considered so "extreme and outrageous" as to allow recovery. See, *Hall v Citizens Ins Co,* 141 Mich App 676, 684; 368 NW2d 250 (1985).

Next, we have determined that plaintiff's claim of invasion of privacy was properly dismissed. Plaintiff alleged two types of invasion of privacy:

(1) intrusion on plaintiff's physical solitude or seclusion; and (2) putting her in a false light. We find no matter which plaintiff had a right to keep private. She was the individual who initially claimed to be Wilda Watkins. No secret or private matter was discovered by Barker. Plaintiff was driving illegally and had outstanding warrants against her.

A false light invasion of privacy claim necessitates an allegation that plaintiff was placed in a false light in the public eye. *Sawabini v Desenberg,* 143 Mich App 373, 381; 372 NW2d 559 (1985). The oral communication must be broadcast to the public in general or publicized to a large number of people. Here, plaintiff has not alleged that Barker placed plaintiff in a false light or that he broadcast the alleged falsity to the public in general or to a large number of people. Barker informed Detroit Police Officer Klebanowski that Darlene Young used the name of Wilda Watkins. This was in fact a true statement.

Next, we consider plaintiff's claims that her state and federal constitutional rights to be free from unreasonable searches and seizures and to be free from deprivations of liberty without due process of law were violated. It has been stated by the United States Supreme Court that detention pursuant to a valid warrant in the face of repeated protests of innocence will, after the lapse of a certain amount of time, deprive an accused of liberty without due process of law. *Baker v McCollan,* 443 US 137; 99 S Ct 2689; 61 L Ed 2d 433 (1979). However, here, Trooper Barker clearly had probable cause to arrest plaintiff. She drove without an operator's license. We find no basis for plaintiff's constitutional rights claims.

Finally, plaintiff claims that a directed verdict was improperly granted upon her assault and

battery claim against Barker. Plaintiff has not pursued her assault claim on appeal. The battery claim is completely without merit as it is well established that an arresting officer may use such force as is reasonably necessary to effect a lawful arrest. SJI2d 115.09. Plaintiff in fact testified that Barker did not physically mistreat her or use unjustified force. Her only claim of a battery is the touching which necessarily occurred during her arrest and detention. There is no merit to this claim.

We next consider whether the City of Detroit is immune from liability for the alleged tortious acts of its employees. Under MCL 691.1407; MSA 3.996(107), all governmental agencies are immune from tort liability when the agency is engaged in the exercise or discharge of a governmental function. Governmental function is defined as "any activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law." *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 591; 363 NW2d 641 (1984). The governmental immunity act sets forth four categories of activity for which tort liability may be imposed. However, plaintiff does not allege that any of these statutory exceptions to immunity are applicable. The booking and detention of plaintiff was an exercise of the city's governmental function to provide for the public's peace, health and safety. Plaintiff has failed to present evidence that the activity was proprietary in nature or within a statutory exception. Officer Klebanowski's booking and detention of plaintiff was the exercise of a governmental function and, as a result, the City of Detroit is immune from liability for any injuries sustained as a result of the alleged tortious performance of its employee.

We next address the question of whether the

trial court correctly dismissed the action as to defendant Klebanowski as a matter of law, finding that no genuine issues of material fact as to negligence or intentional tort claims existed. Plaintiff's argument against Klebanowski appears to be that at the time plaintiff was brought into the Detroit police station by Trooper Barker to be booked, Klebanowski should have believed that plaintiff was not Wilda Watkins or, at least, should have further investigated her claim. Plaintiff alleges that Klebanowski's actions were intentional. We find no merit to these allegations. As discussed above, plaintiff was arrested for several traffic violations as well as outstanding warrants in both her own name and the name she first used, Wilda Watkins.

Klebanowski typed plaintiff's arrest card with the name Darlene Young and indicated that she used the alias of Wilda Watkins, which was in fact true. At that point, Klebanowski had no basis to know what in fact plaintiff's legitimate name was because she had no identification on her. It was very possible that plaintiff had used the name of Wilda Watkins falsely in the past. Plaintiff was released the following day into the custody of the Sterling Heights police. At this point, Klebanowski's involvement ended. We agree with the trial court that the negligence or intentional tort claims are completely baseless as against Officer Klebanowski.

We next address the question of whether the trial court correctly granted summary judgment to defendants Sterling Heights, Blanchard, Facemyer and Foltz on the negligence claims. Again, the trial court did not specify the subsection upon which summary judgment was granted or the reasons for granting the motion. However, we find that summary judgment would have been appro-

priate under GCR 1963, 117.2(1), now MCR 2.116(C)(8), for the reason that the City of Sterling Heights and the individual defendants are immune from liability. As discussed above, a governmental agency is immune from liability when the agency engages in the exercise or discharge of a governmental function. None of the four statutory exceptions apply to the instant actions. The City of Sterling Heights, was performing a governmental function by providing police services. As such, Sterling Heights is immune from liability.

We have also determined that under *Ross, supra,* the individual defendants are immune. The officers were obviously acting during the course of their employment and within the scope of their authority. We find no indication that the officers were not acting in good faith. Further, it is our opinion that the Sterling Heights defendants were performing discretionary, as opposed to ministerial, acts. Plaintiff claims that they were negligent in their investigation of her identity. The course of such an investigation involves discretionary decision-making. The officers must exercise personal deliberations, decisions and judgments. Therefore, the negligence claims were properly dismissed on the motion for summary judgment.

Plaintiff next claims that the court erred in directing a verdict for the Sterling Heights defendants at the close of her proofs as to the remaining intentional tort claims. When reviewing a grant of a directed verdict, this Court in *Williams v Cunningham Drug Stores, Inc,* 146 Mich App 23, 25; 379 NW2d 458 (1985), stated:

> [A]n appellate court must view the evidence presented in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his

favor. A trial court's grant of a directed verdict in favor of a defendant at the close of the plaintiff's proofs will be reversed if the evidence, when viewed in this manner, establishes a prima facie case.

We find that the trial court properly granted defendants' motions for a directed verdict at the close of plaintiff's proofs. The evidence presented by plaintiff showed that all of the officers involved in this incident had probable cause to arrest plaintiff and to hold her as Wilda Watkins.

We next consider whether the trial court improperly granted defendants attorney fees under 42 USC 1988. Upon motion, defendants asked for attorney fees pursuant to this code section, which provides in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title ix of Public Law 92-318, or title vi of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

A prevailing plaintiff should ordinarily recover attorney fees unless special circumstances would make such an award unjust. Nevertheless, the prevailing defendant in a civil rights case may recover attorney fees only if the trial court, in its discretion, determines that the suit was vexatious, frivolous or brought to harass. *Varney v O'Brien,* 147 Mich App 397; 383 NW2d 213 (1985). It is this Court's opinion that defendants were entitled to attorney fees under the above-quoted code section. Plaintiff's suit was frivolous and caused considerable expense to defendants. Plaintiff presented no evidence that any officer acted without probable cause or that her civil rights were violated.

However, we note that defendants' motion was not in compliance with GCR 1963, 526. Defendants apparently presented a bill of costs to the court at the motion hearing on March 16, 1984. This was over thirty days after the order of directed verdict was entered on February 9, 1984. Further, it does not appear that defendants submitted a formal bill as required by GCR 1963, 526.11. We find no such bill of costs in the lower court record. At the motion hearing, defendants asked for $7,600.85 in pretrial attorney fees, $4,500 in actual trial attorney fees and $83 in process serving and witness fees. Clearly, the granting of the $83 for process serving and witness fees was inappropriate because defendants failed to comply with GCR 1963, 526.

Nevertheless, we conclude that defendants should be allowed to recover attorney fees even though the court rule was not complied with thoroughly. The federal courts have held that attorney fees under § 1988 are different and independent from costs awarded after the conclusion of a lawsuit. See, *Leftwich v Harris-Stowe State College,* 702 F2d 686, 694 (CA 8, 1983). We follow the federal approach and find that the attorney fees here should be treated separately from costs granted under GCR 1963, 526.

We next address the question whether the trial court erred in denying plaintiff's motion to amend her complaint. On the first day of trial, plaintiff sought to amend her complaint to include allegations regarding a 1981 arrest during which plaintiff was apparently again arrested as Wilda Watkins. The trial court denied plaintiff's motion because of the resulting surprise and prejudice to defendants. The court found that the 1981 incident was separate and distinct from the instant case and that the amendment would expand the area of

liability alleged. We find that the court's ruling was in compliance with GCR 1963, 118.1, now MCR 2.118(A). We conclude that the court properly denied plaintiff's motion.

Plaintiff has stated no reason why her motion to amend to add allegations regarding the 1981 arrest was not made earlier. Plaintiff cannot claim that late discovery was necessary because she obviously knew the details of the event. Further, seeking to add the new allegations on the first day of trial was unduly prejudicial to defendants. The 1981 arrest involved different facts and would have required additional discovery. We find no abuse of discretion on this issue.

Finally, we review the question of whether the trial court erred in allowing the admission of evidence of plaintiff's Roseville conviction. On October 4, 1978, plaintiff pled guilty to a larceny charge in the City of Roseville. She was sentenced to sixty days and given credit for time served under the Wilda Watkins warrants. Plaintiff claims that this evidence should have been excluded at trial. However, we can find no evidence that an objection was made to its admission. Rather, a stipulation to the above facts was read into the record by plaintiff's own counsel on February 6, 1984.

Under MRE 103, an objection to the admission of evidence must be made before error can be predicated upon the ruling. Generally, this Court will not address issues which have not been preserved for appellate review. However, this rule is not absolute and departure may be made where consideration of the claim is necessary to a proper determination of the case. *Harris v Pennsylvania Erection & Construction,* 143 Mich App 790, 795; 372 NW2d 663 (1985).

We conclude that consideration of the issue of

the admissibility of evidence of the Roseville conviction is not necessary to a proper determination of this case because, as discussed earlier, all of plaintiff's claims are without merit. Therefore, the issue of damages, to which the Roseville question relates, is moot.

We affirm the lower court's orders. However, the $83 costs awarded for witness and process serving fees is vacated.

BRONSON, P.J., did not participate.