WYMER v HOLMES

Docket No. 76457. Submitted March 21, 1985, at Lansing.—Decided
     May 13, 1985. Leave to appeal applied for.
     Six-year-old Jennifer Wymer drowned in a pond at the home of
     James and Coleen Holmes, her uncle and aunt, while she and
     her mother were visiting. Kenneth Wymer, Jennifer's father, as
     personal representative of the estate of Jennifer Wymer, de-
     ceased, filed a wrongful death action, based on theories of
     negligence and attractive nuisance, against James and Coleen
     Holmes in Tuscola Circuit Court. The court, Patrick R. Joslyn,
     J., entered judgment for defendants on the jury's verdict of no
     cause of action. Plaintiff appeals. Defendants cross-appeal from
     a pretrial order denying their motion for summary judgment.
     *Held:*
          1. Reversal is required because of the injection of the issue of
     negligent parental supervision into the trial court proceedings.
     On retrial, any negligent supervision by the mother shall not
     be argued or instructed upon as a basis for absolving defen-
     dants from liability.
          2. Defendants' argument that the trial court erred by deny-
     ing their motion for summary judgment based on the recre-
     ational use act is without merit. The recreational use act does
     not apply to this case.
          3. The trial court correctly excluded as inadmissible hearsay
     evidence of decedent's medical records as they were offered to
     prove the depth of the water in which decedent drowned.
          4. Testimony by defendant James Holmes regarding the

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Negligence § 377.
    Am Jur 2d, Parent and Child § 112 *et seq.*
    Liability of parent for injury to unemancipated child caused by
       parent's negligence. 41 ALR3d 904.
[2] Am Jur 2d, Negligence § 192 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under Negli-
       gence.
[3] Am Jur 2d, Premises Liability § 23 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under Premises
       Liability.

relative safety of his pond as opposed to a nearby public beach should not be admitted upon retrial.

5. The issue of unlawful maintenance of defendants' pond should not be raised on retrial.

Reversed and remanded for retrial.

1. NEGLIGENCE — INFANTS — PARENTAL NEGLECT.

The studied injection of the issue of negligent parental supervision in an action brought against persons other than the parents for the wrongful death of a child is reversible error.

2. NEGLIGENCE — INTERVENING CAUSE.

An intervening cause will not sever whatever connection there may be between a plaintiff's injuries and a defendant's negligence if that intervening event was reasonably foreseeable.

3. NEGLIGENCE — PROPERTY OWNERS — RECREATIONAL USE STATUTE
— SOCIAL INVITEES.

The recreational use statute, the purpose of which is to protect holders of private lands whose property, by its very nature, is subject to use by members of the general public for recreational purposes without seeking or obtaining permission from the landowner, does not apply to social invitees of the landowner (MCL 300.201; MSA 13.1485).

*Skinner & Gustafson* (by *David R. Skinner),* for plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Frank M. Quinn),* for defendant.

Before: SHEPHERD, P.J., and V. J. BRENNAN and C. JOBES,\* JJ.

PER CURIAM. Plaintiff brought this wrongful death action alleging that the decedent, his six-year-old daughter, drowned in defendants' pond. The claim was based on the theories of negligence and attractive nuisance. The trial court entered judgment upon the jury's verdict of no cause of action. Plaintiff appeals as of right. Defendants

---

\* Recorder's Court judge, sitting on the Court of Appeals by assignment.

cross-appeal from a pretrial order denying their motion for summary judgment. We reverse the judgment for defendants and remand for a new trial.

Linda Wymer and her six-year-old daughter Jennifer were visiting the home of Linda's sister and brother-in-law, the defendants, during Memorial Day weekend, 1981. Pam Orlando, a friend of defendants, was also visiting with her three daughters, ages 3, 5 and 7. Jennifer Wymer, defendants' three-year-old daughter and seven-year-old son, and Orlando's three children played in and around defendants' home while the adults were inside. Linda Wymer had examined the pond which defendants had constructed in their backyard, but she was unable to see the bottom of it. She believed it was shallow. There were no dividers or markers indicating the depth of the pond. Linda Wymer and defendants allowed the children to go wading in the pond. The children were told to stay in the shallow section near the bank. Defendant Coleen Holmes told Jennifer Wymer three times to stay near the bank. In addition, the children were told to wade, not to swim. After catching some polliwogs with a bucket, the children left the water and started playing near the home.

Defendants had originally planned on grilling hot dogs in their backyard next to the pond. However, the children were hungry, so defendants decided to cook the hot dogs inside the house and eat them outside at the picnic table next to the pond. The decedent asked for and received permission to go wading in the pond with the other children. Defendant Coleen Holmes was in the kitchen preparing the hot dogs. Defendant James Holmes sat at the kitchen table with his back to the windows overlooking the pond. Linda Wymer sat at the kitchen table, facing the windows over-

looking the pond. Approximately five minutes later, Linda Wymer and defendants were taking the hot dogs outside to the picnic table, when defendants' seven-year-old son asked where Jennifer was. Defendants and Linda Wymer searched the house and then looked outside. James Holmes dove into the pond while Linda Wymer and the co-defendant went up the driveway to search for the child. James Holmes found the child in the shallow part of the pond, where the water was only approximately four to five feet deep. He administered artificial respiration while Linda Wymer rubbed the child's extremities. However, the child never regained consciousness. She died the following day.

Plaintiff moved before trial to exclude all mention of Linda Wymer's negligent supervision as a cause of the child's death. The trial court heard the motion and took it under advisement pending introduction of proof. There was substantial testimony regarding the mother's behavior introduced at trial. In closing argument, defense counsel urged that the mother's negligent supervision was the sole cause of the tragedy. Plaintiff's attorney did not object. Over plaintiff's objection, the trial court instructed as follows with respect to the defense theory:

"It is the claim of the Defendants that Jennifer was wading in the pond pursuant to a request made by, and permission extended by and through her mother Linda Wymer, who was there and was supervising the youngster at the time of the occurrence.

"That if there was any negligence in connection with what happened, proximately causing the drowning, it would be the negligence of the mother in not adequately supervising her youngster at the time of the occurrence. * * *

"If you decide that the Defendants were negligent,

and that such negligence was a proximate cause of the occurrence, it is not a defense that the conduct of Linda Wymer, mother of Jennifer Wymer, who is not a named party to this suit, may also have been a cause of this occurrence. However, if you decide that the only proximate cause of the occurrence was the conduct of Linda Wymer, who is not a named party to this lawsuit, then your verdict should be for the Defendants."

Plaintiff argues, and we agree, that reversal is required because of the injection of the issue of negligent parental supervision into the trial court proceedings. Although there was no objection to defense counsel's remarks in closing argument, we believe that "what occurred may have caused the result or played too large a part and may have denied [plaintiff] a fair trial". *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 103; 330 NW2d 638 (1982). Furthermore, plaintiff's counsel had already moved to exclude the testimony, thereby preserving an objection. The effect of defense counsel's argument was exacerbated by the court's instructions, to which plaintiff objected. The issue is properly before us.

That defendants' attorney deliberately raised the issue of the mother's conduct is apparent from the following portion of his argument:

"I think at most we can raise a question of supervision here. It wasn't the pond. The pond is a very ordinary recreational pond, nothing unusual about it, nothing unsafe about it. *There may be a question of supervision,* as to whether they should have had somebody stationed out there watching them each and every second.

"And the original thought was that they would have, they would be cooking the hot dogs out there. I guess that's why they let them go out anyway, they figured that within a minute we'll be out there with them. But that didn't happen. They changed the plan. The hot

dogs stayed inside, as did the adults. So the kids are out there for a very few minutes by themselves.

"*If there is some question then of inadequate supervision, and I say that's really all we're dealing with,* should we have had somebody out there to look at the youngsters in those few five minutes when this happened, *who should be blamed? Who is at fault that the youngster Jennifer wasn't being supervised? Her mother was right there. She was aware of the warning that was given to the youngster* by Coleen Holmes. Stay by the bank, no wading, no swimming, wade only, and stick by the bank. Warned three times to stay near the bank. *Her mother heard that, and was there. And where was the mother during those fatal five minutes? She told me she continued sitting at the kitchen table chatting, visiting.* Coleen was tied up getting the food ready. And as I recollect Mr. Holmes was sitting at the kitchen table, and they were all there, they just had no reason to believe, or conceive that anything like this would happen." (Emphasis added.)

On appeal, defendants do not directly challenge the applicable principle of law, that the studied injection of the subject of parental fault constitutes reversible error. *Elbert v City of Saginaw,* 363 Mich 463, 482; 109 NW2d 879 (1961); *Bravo v Chernick,* 28 Mich App 210, 213; 184 NW2d 357 (1970); *Lapasinskas v Quick,* 17 Mich App 733, 736; 170 NW2d 318 (1969). Rather, they argue that even though the mother's negligence was irrelevant to the case on the issue of fault, it remained material to the issue of proximate cause. We reject this hollow distinction. It seems clear to us that the trial court should not have allowed the mother's negligence to enter into this matter in any form. As noted in *Elbert, supra,* p 474:

"The principal error claimed by appellant relates to the legal duty involved, for the asserted breach of which action is brought. The defendants assert, in reply a lengthy argument as to proximate cause. It only

obscures legal analysis to lump together, as 1, these 2 concepts. A duty arises because of a relationship between the parties. Should it be found to exist, an actor has an obligation to conform to a certain standard of conduct. Proximate cause, on the other hand, once there is cause in fact, involves the cut-off problem, the problem of where to draw the line as to liability. To somewhat oversimplify, the one looks at obligation, the other at consequences. *It is possible, of course, as a matter of terminology, to phrase any question relating to duty, breach, or the consequences thereof, any question, indeed, relating to negligence, in terms of 'proximate cause.'* But when we do so we obscure the whole process of decision, we scramble the functions of judge and jury, and we conceal the critical issues of policy involved shaping judgment. In short, we lower a 'word curtain' over what is going on. So what? What harm is done? Is it just a matter of verbiage? This case furnishes a vivid answer." (Emphasis added.)

Even if we allowed for the possibility of defendants doing through the back door of "proximate cause" what they clearly cannot do in terms of comparative fault, defendants could not use such a technique in the present case. In light of the uncontroverted evidence adduced at trial, the argument and instruction complained of were improper. An intervening cause does not break the connection between the defendants' negligence and the injury if the intervening event was foreseeable. *Davis v Thornton,* 384 Mich 138, 148; 180 NW2d 11 (1970); *Price v Manistique Area Public Schools,* 54 Mich App 127, 132-133; 220 NW2d 325 (1974). In this case, the proof is plain that defendants must have been aware of the mother's negligent omission, if any, since they were in the same room with her at the moment of the accident. The allegedly negligent supervision was not only foreseeable by defendants, but they must have had actual knowlege of the situation.

We do not mean to say that on retrial no proof may be admitted as to what the mother was doing at the time. Such evidence will help develop the factual background for the jury's deliberations. Nevertheless, any negligent supervision by the mother shall not be argued or instructed upon as a basis for absolving defendants from liability.

On cross-appeal, defendants argue that the trial court erred by denying their motion for summary judgment, which was based on the recreational use act, MCL 300.201; MSA 13.1485. This claim lacks merit. The statute does not apply to this case. The purposes of the statute, promotion of tourism and opening up of lands to use by the general public, would not be served by application of the provision to social invitees such as the decedent. *Burnett v City of Adrian,* 414 Mich 448, 475; 326 NW2d 810 (1982) (MOODY, J., concurring); *Thomas v Consumers Power Co,* 58 Mich App 486, 495-496; 228 NW2d 786 (1975), *modified on other grounds* 394 Mich 459 (1975). "[T]he intent of the Legislature was to protect holders of private lands whose property, by its very outdoor nature, would be subject to use by members of the general public for recreational purposes but who did not seek or obtain permission" from the land owner. *Danaher v Partridge Creek Country Club,* 116 Mich App 305, 311; 323 NW2d 376 (1982).

Although not necessary to our decision, we will address the remainder of the issues raised by plaintiff because they may reappear on remand.

Contrary to plaintiff's argument, the trial court correctly excluded the decedent's medical records. The records were inadmissible hearsay insofar as they were offered to prove the depth of the water in which decedent drowned. MRE 801(c), 803(6).

At trial, defendant James Holmes gave an opinion regarding the relative safety of his pond as

opposed to a nearby public beach. We conclude that this testimony should not be admitted upon retrial. Although the witness may have been competent to give his opinion, MRE 701, the opinion itself was irrelevant to the issue in this case, which is the reasonableness of defendants' conduct. MRE 401; *Beals v Walker,* 416 Mich 469, 480-481; 331 NW2d 700 (1982). That defendants' pond was similar to some other property does not mean it was reasonably safe.

The last issue relates to a supplemental jury instruction. In his closing argument, plaintiff's attorney improperly remarked "that nobody, the Legislature, nobody" would permit defendants to maintain the pond as they did, without ropes or markers at the deep end. Defendants objected. The trial court instructed the jury that there was no evidence of illegal conduct in the case, and that the issue should not be considered. However, during their deliberations the jury asked, "Is there a code or zone *(sic)* that requires a rope or marker on ponds." The judge tersely replied, "No." Plaintiff aruges that the judge should have again told the jurors that their question related to an irrelevant matter. We agree that a renewed instruction to that effect should have been given. Of course, the issue would not have arisen but for the improper argument by plaintiff's attorney. We trust that counsel for plaintiff will not cause any further controversy on this issue on remand.

Reversed and remanded for further proceedings consistent with this opinion. Cost to plaintiff.