## PEOPLE v LYONS

Docket No. 90598. Submitted March 9, 1987, at Lansing. Decided November 3, 1987. Leave to appeal applied for.

Joseph Lyons was convicted of third-degree criminal sexual conduct following a jury trial in Washtenaw Circuit Court, Henry T. Conlin, J. During the deliberations of the jury, the jury gave the bailiff a note which stated: "The jury cannot reach a decision. What does the judge suggest?" Without consulting counsel, the judge instructed the bailiff to inform the jury to "keep on working." The bailiff so informed the jury. Defendant raised the issue of the bailiff's communication with the jury in a motion for a new trial, which was denied. Defendant appealed.

The Court of Appeals *held:*

Michigan has a strict rule prohibiting communication with a deliberating jury outside of the courtroom and the presence of counsel. Such communications are grounds for a new trial regardless of whether the communications were prejudicial. Accordingly, a new trial is mandated.

Reversed and remanded.

SAWYER, P.J., concurred but wrote separately to indicate that he felt the Michigan Supreme Court should reexamine whether reversal is mandated even where, as here, no prejudice has been shown.

CRIMINAL LAW — TRIAL — JURY — DELIBERATION OF JURY — COMMUNICATION WITH JURY.

It is error mandating reversal for the trial judge in a criminal case to instruct the bailiff to inform the jury, outside the presence of the judge and counsel, that the jury should keep on

REFERENCES

Am Jur 2d, Trial §§ 999 *et seq.;* 1001, 1045 *et seq.;* 1069.

Propriety and prejudicial effect, in federal criminal cases, of communications between judge and jury members made in the absence of counsel, regarding the ability of jury members to continue deliberations. 64 ALR Fed 874.

Communication between court officials or attendants and jurors in criminal trial as ground for mistrial or reversal—post-Parker cases. 35 ALR4th 890.

working where the jury had given the bailiff a note indicating that the jury could not reach a decision and asking for the judge's suggestion as to how the jury should proceed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Kirby W. Tabby,* Assistant Prosecuting Attorney, for the people.

*Margaret M. S. Noe,* for defendant.

Before: SAWYER, P.J., and G. R. McDONALD and H. J. SZYMANSKI,* JJ.

H. J. SZYMANSKI, J. Following a jury trial, defendant was convicted of third-degree criminal sexual conduct, MCL 750.520d(1)(c); MSA 28.788(4)(1)(c). Defendant was sentenced to three to fifteen years in prison. He appeals as of right and we reverse.

On April 16, 1985, complainant went to defendant's Ypsilanti apartment. There she drank several beers and smoked a marijuana cigarette. A number of individuals, including defendant, were present during the course of the evening. At one point, complainant sniffed from a small vial containing "rush." She immediately felt light-headed and soon thereafter requested that someone call her boyfriend to pick her up. Complainant then lost consciousness on a couch in defendant's apartment.

Sometime thereafter, she regained consciousness to find defendant sitting behind her on the couch with his hands underneath her shirt, touching one of her breasts. Complainant passed out again, and, when she regained consciousness, she saw defendant wearing only his underwear, standing in front of a window. Defendant approached complainant and began to undo her pants. Complain-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ant attempted to get up but was too weak and passed out again. When she regained consciousness, her pants were off, and defendant was lying on top of her having sexual intercourse.

Defendant denied having intercourse with complainant and stated he saw her leave the apartment earlier that evening. Defendant contended that complainant accused him of rape because she was angry over money she had misplaced.

During the first day of deliberations, the jury gave the bailiff a note which stated: "The jury cannot reach a decision. What does the judge suggest?" Without consulting either party, the judge instructed the bailiff to inform the jury to "keep on working." The bailiff did so. Following his conviction, defendant moved for a new trial. One of the grounds raised was the judge's communication with the jurors. The court denied defendant's motion for a new trial.

Defendant argues that a new trial is warranted due to the judge's communication with the jury, directing it to continue deliberating. We agree.

In Michigan there is a strict rule prohibiting communication with a deliberating jury outside of the courtroom and the presence of counsel. *Rushing v Wayne Co,* 138 Mich App 121, 150; 358 NW2d 904 (1984), accord, *People v Cain,* 409 Mich 858; 294 NW2d 692 (1980), rev'g 94 Mich App 644; 288 NW2d 465 (1980). In *Cain, supra,* the bailiff took to the judge a note from the jury which inquired whether the verdict need be unanimous. 94 Mich App 645. At the judge's direction, the bailiff told the jury their verdict had to be unanimous. The Supreme Court summarily reversed defendant's conviction in lieu of granting leave for the reasons stated in Judge (now Justice) M. F. CAVANAGH's dissent below. Judge CAVANAGH noted that the strict rule prohibiting any communication

with the jury outside of the courtroom and the presence of counsel had not been relaxed in Michigan and was grounds for a new trial regardless of whether the communications or instructions were prejudicial. 94 Mich App 647.

We believe that the instant case mirrors *Cain, supra,* and preempts all other considerations. We do not agree with the prosecution that defendant need show prejudice before a new trial is granted. The prosecution cites for support *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), and *People v Hardin,* 421 Mich 296; 365 NW2d 101 (1984). However, both *Sullivan* and *Hardin* involved supplemental charges given to a hung jury. *Sullivan, supra,* adopted standard jury instruction 5.4 of the American Bar Association. *Hardin, supra,* refined the Court's ruling in *Sullivan, supra,* and examined whether the departure from the American Bar Association's standard jury instruction 5.4 required reversal. We believe these cases are inapplicable to a resolution of defendant's claim. Following the Supreme Court's summary reversal in *Cain, supra,* no prejudice need be shown in the instant case.

In light of our decision we decline to discuss the merits of defendant's ineffective assistance of counsel claim.

Defendant's third-degree criminal sexual conduct conviction is reversed. The trial court erred in failing to grant defendant's motion for a new trial. Remand for a new trial is proper in the instant case due to the judge's communication with jurors outside of the courtroom and the presence of counsel.

Reversed and remanded for a new trial.

G. R. McDONALD, J., concurred.

SAWYER, J. *(concurring).* I reluctantly concur.

I agree with the majority that the Supreme Court's decision in *People v Cain,* 409 Mich 858; 294 NW2d 692 (1980), which adopted the dissenting opinion by Judge (now Justice) CAVANAUGH in *People v Cain,* 94 Mich App 644; 228 NW2d 465 (1980), controls the case at bar and that reversal is, therefore, required. Nevertheless, I write separately to express my displeasure with such a mandated result in the instant case and to urge the Supreme Court to reexamine whether error requiring reversal always occurs when a court officer communicates ex parte with a jury during deliberation.

While I cannot disagree with the proposition that an invasion into the jury room must be looked upon with great concern and should not be ordinarily permitted and, when it does happen, reviewed with great skepticism, I cannot agree with the proposition that such an invasion can never be considered harmless. The rigid rule of requiring reversal whenever there is any contact with the jury, without inquiring into the question of prejudice to the defendant, serves no legitimate interest of justice. The absurdity of such a rule was articulately pointed out by Judge M. G. HARRISON in *People v Kent,* 157 Mich App 780, 791-792; 404 NW2d 668 (1987), in which this Court found no necessity for reversing a conviction on the basis that a court clerk took the jury's meal orders before deliberations[1]:

> Broad rules of law designed to address especially egregious situations on occasion became petrified without additional analysis over periods of time. It makes little sense to have a rule so absolute that

---

[1] The defendant's conviction was reversed, however on other grounds.

the potential result is reversal of an otherwise
errorless trial because of an insignificant contact
with a jury which does not even raise the concern
of those who were present during the proceedings.
Those who promulgate such rules would do well to
consider the consequences of reversal of convic-
tions where, despite clear instructions to the con-
trary, a juror suddenly appears at a secretary's
desk and makes a request for water or to call a
babysitter, or a juror knocks at the door and
verbally requests certain exhibits, or a note is sent
to a judge indicating how the voting stands. Is a
court officer, when taking a jury to a meal, prohib-
ited from verbally indicating the spending limits?

Little enough confidence exists today in our
institutions without further perpetuating its ero-
sion by an automatic rule applied to court person-
nel who are under oath to obey the law where
nothing more is revealed than an incidental con-
tact unrelated to the case itself. The judicial sys-
tem must demonstrate some confidence in those
who are entrusted with its well-being and, in fact,
have little interest in the outcome of a matter,
when there is no showing of prejudice (or, after
scrutiny, even a hint of such).

Admittedly, the contact in the case at bar was
not as innocuous as in *Kent.* Rather than taking
meal orders, the court officer in the case at bar
delivered the trial judge's message to "keep on
working" in response to the jury note it could not
reach a decision. Certainly such a breach of the
sanctity of the jury room demanded investigation,
and I would agree that a court should be liberal in
finding prejudice to defendant arising from the
contact in order to insure that his right to a fair
trial was preserved. However, the right to a fair
trial does not mean that a defendant is entitled to
a perfect trial.

In the case at bar, defendant has not demon-
strated to my satisfaction that he was prejudiced

by the trial court's message to the jury to "keep on working." Absent such a showing, I would vote to affirm the conviction. It is only the rule of stare decisis which prevents me from doing so. See *People v Mitchell,* 428 Mich 364, 369-370; 408 NW2d 798 (1987).

I find it regrettable that the citizens' tax dollars must be wasted on giving a defendant another trial when he has received a fair trial the first time. I find it unconscionable that the victim must be put through another trial in futile reverence to a rule which serves no useful purpose. It is little wonder that victims may be reluctant to come forward when our justice system places upon them the burdens of following such absurd rules. As Judge HARRISON pointed out, such results as we are compelled to reach today only serve to deepen the erosion of public confidence in our judiciary. Therefore, while I am constrained to vote for reversal, I urge the Supreme Court to reverse us and restore some common sense to the system.