HICKEY v ZEZULKA

HICKEY v MICHIGAN STATE UNIVERSITY

Docket Nos. 90414, 90520, 101188. Submitted April 21, 1988, at
Lansing. Decided June 19, 1989.

John J. Hickey, III, a student at Michigan State University, was
taken into custody by MSU Department of Public Safety Officer
Linda Zezulka for driving while intoxicated and driving on a
suspended license. Following a Breathalyzer test, Hickey was
placed in a holding cell at the Department of Public Safety for
later transfer to the Ingham County Jail. Contrary to depart-
mental policy, Zezulka did not take Hickey's belt from him
before placing Hickey in the cell and she did not check on
Hickey until instructed to take him to the Ingham County Jail.
When Zezulka entered the cell, she found Hickey hanging by a
noose fashioned from his belt and socks from a metal bracket
which supported a metal screen which fit over a heater set in
the wall of the cell. John J. Hickey, Jr., as personal representa-
tive of the estate of John J. Hickey, III, deceased, brought an
action in Ingham Circuit Court against Linda Zezulka, Ferman
Badgley in his capacity as commander of the MSU Department
of Public Safety and Richard Bernitt in his capacity as the
director of the MSU Department of Public Safety, alleging both
negligence and violation of decedent's civil rights. John J.
Hickey, Jr., again in his representative capacity, brought an
action in the Court of Claims against MSU, alleging both viola-
tion of decedent's civil rights and liability on the basis of a
defect in a public building. The actions were consolidated for
trial by stipulation. In the circuit court action, the jury found
that each of the individual defendants was negligent but that
only Zezulka's negligence was a proximate cause of decedent's
death and that Zezulka had violated decedent's civil rights and
awarded plaintiff a verdict of $1,000,000 against Zezulka. The

REFERENCES

Am Jur 2d, Costs § 14; Municipal, County, School, and State Tort
Liability §§ 111 et seq., 294 et seq.; Negligence §§ 621-627; Penal
and Correctional Institutions §§ 174-177; Statutes §§ 347 et seq.

See the Index to Annotations under Attorneys' Fees; Costs of
Actions; Governmental Immunity or Privilege; Police and Law
Enforcement Officers; Prisons and Prisoners; Statutes.

trial judge, Michael G. Harrison, J., sitting as the Court of Claims, found in favor of MSU on the civil rights claim but found in favor of plaintiff on the defective building claim and awarded plaintiff $650,000. Badgley, Bernitt and MSU, having prevailed on the civil rights claim, sought attorney fees pursuant to 42 USC 1988, which were denied. Zezulka appealed from the $1,000,000 jury verdict. MSU appealed from the $650,000 Court of Claims verdict. MSU, Bernitt and Badgley appealed from the order denying attorney fees. The appeals were consolidated.

The Court of Appeals *held:*

1. The public building exception to statutory governmental immunity applies only where an injury results from a defect or dangerous condition of the building itself. Under the circumstances in this case, the trial court did not err in finding that the exposed bracket from which decedent hanged himself constituted a building defect which was a proximate cause of decedent's death.

2. Defendant Zezulka was neither entitled to governmental immunity as to the negligence claim nor to good faith immunity as to the civil rights claim, since her failure to remove the belt and to keep an eye on the decedent constituted failures to discharge ministerial functions.

3. None of the errors claimed by defendant Zezulka with respect to the trial court's instructions to the jury mandate reversal.

4. The trial court properly admitted into evidence the rules of the Michigan Department of Corrections relating to standards for local detention facilities which were in effect at the time of decedent's death.

5. No error mandating reversal arose out of the fact that the jury in the circuit court action heard some evidence relating to the Court of Claims action.

6. The record fails to establish that the trial judge entered the jury room during deliberations.

7. The cumulative effect of the alleged errors does not mandate reversal.

8. The question of whether a prevailing defendant in a 42 USC 1983 civil rights action is entitled to attorney fees turns upon the trial court finding that the plaintiff's action was vexatious, frivolous or brought to harass. The trial court did not abuse its discretion in determining that plaintiff's actions against MSU, Bernitt and Badgley were not vexatious, frivolous or brought to harass.

Affirmed.

MICHAEL J. KELLY, P.J., concurred separately to express his views on the building defect claim.

SULLIVAN, J., dissented from the building defect portion of the opinion. He would hold that there was no evidence that the physical condition of the room itself posed a danger to decedent. He would reverse the judgment by the Court of Claims against MSU.

1. GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS.

The public building exception to governmental immunity applies only where an injury is occasioned by a physical defect or dangerous condition of a building itself (MCL 691.1406; MSA 3.996[106]).

2. GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS — JAILS.

The design of a detention cell may constitute a building defect within the meaning of the public building defect exception to statutory governmental immunity where the cell is used to house persons with self-destructive urges and the design of the cell is such as to permit expression of those self-destructive urges (MCL 691.1406; MSA 3.996[106]).

3. GOVERNMENTAL IMMUNITY — POLICE OFFICERS — MINISTERIAL ACTS.

The failure of a police officer to remove a prisoner's belt before placing the prisoner in a detention cell where there is a departmental rule that belts shall be removed prior to placement in the cell and the failure of an officer to check on the prisoner on a regular basis after having been ordered to do so constitute the breach of ministerial acts for which the officer is not clothed with governmental immunity.

4. CIVIL RIGHTS — QUALIFIED IMMUNITY — DISCRETIONARY ACTS.

Good faith or qualified immunity in a 42 USC 1983 civil rights claim is available to a governmental official only if the act by the official giving rise to the claim was discretionary in nature.

5. NEGLIGENCE — INTERVENING CAUSE.

An intervening cause will not sever whatever connection there may be between a plaintiff's injuries and a defendant's negligence if that intervening event was foreseeable.

6. STATUTES — AMENDMENT OF STATUTES — PROSPECTIVITY — DEPARTMENT OF CORRECTIONS.

The 1984 amendment of a section of the Department of Corrections act to take away the Department of Corrections' supervisory and rule-making power over local detention facilities

changed existing substantive law and should be limited to prospective application (MCL 791.262; MSA 28.2322).

7. COSTS — ATTORNEY FEES — CIVIL RIGHTS.
A prevailing defendant in a 42 USC 1983 civil rights case may recover attorney fees only if the trial court, in its discretion, determines that the suit was vexatious, frivolous or brought to harass.

*Church, Kritselis, Wyble & Robinson, P.C.* (by *J. Richard Robinson*), for plaintiff.

*Zamplas, Paskin, Nagi, Baxter, Johnson & Walker, P.C.* (by *Jeannette A. Paskin*), for defendants.

Before: MICHAEL J. KELLY, P.J., and SULLIVAN and M. J. SHAMO,* JJ.

M.J. SHAMO, J. This case is the consolidation of three appeals as of right. In the first case, defendant Linda Zezulka appeals the jury verdict of $1,000,000 in favor of John Joseph Hickey, Jr., personal representative of the estate of John Joseph Hickey, III, deceased. In the second case, Michigan State University appeals the $650,000 Court of Claims verdict in favor of John Joseph Hickey, Jr., personal representative of the estate of John Joseph Hickey, III, deceased. And in the third case, defendants Michigan State University, Richard Bernitt and Ferman Badgley appeal the trial court's refusal to award defendants attorney fees. We affirm.

In the early morning hours of October 3, 1982, decedent John Joseph Hickey, III, a student at MSU, was driving along Harrison Road on the campus of MSU when officers of MSU's Department of Public Safety observed Hickey driving errati-

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

cally. After Officer Linda Zezulka stopped Hickey's vehicle, she noticed that Hickey appeared to be intoxicated. Hickey did not have a driver's license because his license had been suspended. He was given sobriety tests and then taken into custody.

Hickey was taken to the East Lansing Police Department for a Breathalyzer test. At the East Lansing Police Department, Officer Zezulka perceived Hickey to be in a jocular mood and noted that Hickey was kidding around with the officers. The results of the Breathalyzer test showed blood alcohol levels of 0.15 and 0.16 percent.

After the Breathalyzer test, Officer Zezulka radioed Department of Public Safety Lt. Meyer for permission to take Hickey to the Ingham County Jail. Lt. Meyer denied Zezulka's request and directed her to take Hickey to the MSU Department of Public Safety for processing and to have his photograph taken.

After Hickey's photograph was taken, Officer Zezulka placed Hickey into the Department of Public Safety's holding cell 171 at about 3:20 A.M. Hickey was advised that he would soon be taken to the Ingham County Jail. Officer Zezulka did not remove any articles from Hickey's person. No one else was placed in the cell with Hickey. Holding cell 171 was one of three detention cells in MSU's Department of Public Safety building. Cell 171 had a nine to ten foot high ceiling and a concrete bench along one side. Above the bench was a heater with a metal mesh that was supported by four metal brackets which extended one to two inches from the wall.

After placing Hickey in the holding cell, Officer Zezulka carried on with her other duties. Zezulka spent some of the time in the processing room which was across the hall from the holding cell. It was Zezulka's responsibility to check on Hickey

because no other officer was assigned to watch Hickey while he was in the cell. Zezulka did not check on Hickey until she was instructed to take him to the Ingham County Jail.

At about 3:57 A.M., Zezulka entered Hickey's cell and observed Hickey hanging from the heating device. Hickey had used his belt and socks to fashion a noose and hung himself from one of the brackets on the heating unit. Hickey was pronounced dead on arrival at Sparrow Hospital in Lansing, Michigan.

Plaintiff John Hickey, Jr., as personal representative of his deceased son's estate, brought an action against MSU in the Court of Claims. Plaintiff also brought a separate action against Ferman Badgley, the police commander of the MSU Department of Public Safety, Richard Bernitt, MSU's Director of Public Safety, and Linda Zezulka. The parties stipulated to the two cases being consolidated for trial.

At the end of the jury trial in this matter, the jury found defendants Badgley, Bernitt and Zezulka to be negligent. However, the jury found only Zezulka's negligence to be a proximate cause of Hickey's death. The jury additionally found that Zezulka violated Hickey's civil rights. The jury awarded plaintiff a verdict of $1,000,000 against Zezulka. The jury rendered a verdict of no cause of action against Badgley and Bernitt. The trial court later denied Zezulka's motion for a new trial, judgment notwithstanding the verdict and remittitur.

In the Court of Claims case against MSU, the trial judge found in favor of defendant MSU on plaintiff's civil rights claim under 42 USC 1983. However, the trial judge found that defendant MSU's building was defective or dangerous and awarded plaintiff $650,000. Defendants Badgley,

Bernitt and MSU petitioned the trial court for attorney's fees pursuant to 42 USC 1988, because they prevailed on plaintiff's civil rights claim. On May 20, 1987, the trial court entered an order denying defendants' petition for attorney fees.

I

MSU argues that it is protected from liability by governmental immunity.

All government agencies are immune from tort liability when they are engaged in the exercise or discharge of a governmental function. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). MSU is a governmental agency under the governmental immunity act. MCL 691.1401(c); MSA 3.996(101)(c).

An exception to the governmental immunity doctrine exists when the facility in question constitutes a defective public building. MCL 691.1406; MSA 3.996(106). In providing this exception to governmental immunity, the Legislature intended to impose a duty to maintain safe public buildings. *Reardon v Dep't of Mental Health,* 430 Mich 398; 424 NW2d 248 (1988). In order for the public building exception to apply, the injury must result from a defect or dangerous condition of the building itself. *Id.* A dangerous or defective condition of a fixture may support a claim of liability under the public building exception to governmental immunity. *Velmer v Baraga Area Schools,* 430 Mich 385; 424 NW2d 770 (1988). A building may be dangerous or defective because of improper design, faulty construction, or the absence of safety devices. *Bush v Oscoda Area Schools,* 405 Mich 716, 730; 275 NW2d 268 (1979); *Reardon, supra,* pp 409-410. The trier of fact is to determine whether a part of a building is defective in light of its as-

signed uses and whether the defect is a proximate cause of the injuries sustained. *Bush, supra,* p 732; *Lockaby v Wayne Co,* 406 Mich 65, 76-77; 276 NW2d 1 (1979).

In the instant case, the Court of Claims judge found that the exposed bracketed heating device over the bench in the holding cell was a proximate cause of decedent's death. The court also found that the absence of a detoxification cell constituted a building defect in light of the assigned use of the cell. The court further determined that MSU had knowledge of the defective condition and failed to take action to protect those confined in the detention cell.

Findings of fact by the trial judge may not be set aside unless clearly erroneous. MCR 2.613(C). A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Hwys,* 397 Mich 44, 46; 243 NW2d 244 (1976).

After reviewing the record, we are convinced that the lower court did not err in finding a defect in MSU's Department of Public Safety building which was a proximate cause of decedent's death.

This Court has previously upheld a trial court ruling that the lack of a detoxification cell constituted a building defect, *Davis v Detroit,* 149 Mich App 249; 386 NW2d 169 (1986), lv den 426 Mich 856 (1986), and that the bar on a cell door could constitute a defect in a public building. *Young v Ann Arbor,* 119 Mich App 512; 326 NW2d 547 (1982), *(On Remand),* 147 Mich App 333; 382 NW2d 785 (1985), lv den 425 Mich 862 (1986). Significantly, our Supreme Court in *Reardon, supra,* p 413, cited with approval its pre-*Ross* decision in *Lockaby, supra* (building exception applica-

ble where plaintiff alleged lack of padding in cell where he was being held), and stated that the case may be harmonized with the ruling in *Reardon* that an injury must result from a defect or dangerous condition of a public building. See also *Kent Co Prosecutor v Kent Co Sheriff (On Rehearing),* 428 Mich 314, 327, n 13; 409 NW2d 202 (1987).

We note that in *Reardon,* and the companion case of *Schafer v Ethridge,* our Supreme Court determined that the public building exception did not apply under the facts of those cases. 430 Mich 417. A similar conclusion was reached by this Court in *Gunn v Northville State Hospital,* 171 Mich App 669; 430 NW2d 815 (1988) (assault/rape of mental patient at hospital by other unsupervised patients). However, in these cases, the complained-of injuries were the result of assaultive acts of intervening third parties rather than any dangerous or defective condition of the building itself. In the instant case, there was no assaultive act by an intervening third party which caused decedent's death.

The finding that Zezulka's negligence was a proximate cause of decedent's death does not preclude a finding that MSU's building defect was also a proximate cause of decedent's death. It is well established that there may be more than one proximate cause of an injury. *Brisboy v Fibreboard Corp,* 429 Mich 540, 547; 418 NW2d 650 (1988); *McMillian v Vliet,* 422 Mich 570, 577; 374 NW2d 679 (1985); *Kirby v Larson,* 400 Mich 585, 605; 256 NW2d 400 (1977). See also *Williamson v Dep't of Mental Health,* 176 Mich App 752; 440 NW2d 97 (1989); *Davis v Detroit, supra,* pp 262-264.

The public building exception to governmental immunity was properly applied in this case and the judgment of the Court of Claims against MSU is affirmed.

II

Linda Zezulka argues that her actions are entitled to governmental immunity. Lower level government officials, employees, and agents are immune from tort liability only when they are (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority, (2) acting in good faith, and (3) performing discretionary, as opposed to ministerial, acts. *Ross, supra,* pp 633-634. The *Ross* Court stated that "the distinction between 'discretionary' and 'ministerial' acts is that the former involves significant decision-making, while the latter involves the execution of a decision and might entail some minor decision-making." *Ross, supra,* p 635.

In *Young v Ann Arbor (On Remand),* 147 Mich App 333; 382 NW2d 785 (1985), lv den 425 Mich 862 (1986), this Court held that a police chief's failure to follow department rules and regulations was negligence of a ministerial nature. Accordingly, this Court ruled that the defendant police chief was not entitled to governmental immunity. In the instant case, Linda Zezulka was engaged in ministerial acts entailing only minor decision-making when she arrested and incarcerated John Joseph Hickey, III. Zezulka's actions merely constituted an obedience to orders and regulations and performance of her duties as a campus police officer. Unfortunately for Zezulka, her decisions not to remove decedent's belt and not to look in on decedent while he was in the detention cell do not constitute discretionary acts. These acts entail only minor decision-making and are ministerial acts. Accordingly, the trial court correctly ruled that Zezulka is not entitled to governmental immunity since she was engaged in ministerial, and not discretionary, acts.

Linda Zezulka also argues that she is entitled to good faith or qualified immunity against plaintiff's claim pursuant to 42 USC 1983. However, qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. *Harlow v Fitzgerald,* 457 US 800, 815; 102 S Ct 2727; 73 L Ed 2d 396 (1982); *Gomez v Toledo,* 446 US 635; 100 S Ct 1920; 64 L Ed 2d 572 (1980). Zezulka's failure to plead the defense of qualified immunity in this case constitutes a waiver of that defense. Moreover, even if the qualified immunity defense had been pled by Zezulka, qualified immunity is not available in this case because Zezulka was not performing a discretionary act. *Harlow, supra,* p 818; *Gordon v Sadasivan,* 144 Mich App 113, 121; 373 NW2d 258 (1985).

III

Zezulka argues that the trial court erred in refusing to instruct the jury on comparative negligence, intervening or superseding cause, and deliberate indifference. Zezulka objected to the trial court's failure to instruct the jury regarding comparative negligence and regarding intervening or superseding cause. Zezulka did not object to the trial court's failure to instruct the jury on deliberate indifference. Without an objection to the trial court's instructions, appellate review is foreclosed unless the complaining party has suffered manifest injustice. *B & M Die Co v Ford Motor Co,* 167 Mich App 176, 183; 421 NW2d 620 (1988). We find Zezulka waived her right to appeal on the issue of whether the trial court should have instructed the jury as to deliberate indifference since no objection was made concerning the lack of the instruction at trial. MCR 2.516(C); *B & M Die Co, supra;* see also *Roberts v City of Troy,* 773 F2d 720, 723 (CA 6, 1985).

Zezulka requested standard jury instructions on comparative negligence and intervening or superseding cause. Zezulka objected to the lack of these instructions. A trial court's failure to give a requested standard jury instruction as required by MCR 2.516(D)(2) does not mandate reversal unless failure to vacate the jury verdict would be "inconsistent with substantial justice." *Johnson v Corbet,* 423 Mich 304, 327; 377 NW2d 713 (1985).

First, Zezulka requested the standard jury instruction which defines comparative negligence, SJI2d 11.01. The note on use to SJI2d 11.01 states that this "instruction should be given where there is a question for the jury as to the negligence of one or more of the plaintiffs." In this case, there was no negligence on the part of the plaintiff. The decedent, in an intoxicated and apparently irrational state, took his own life. There is no evidence to support that the decedent was negligent. Thus, the trial court did not err in refusing to give the requested instruction to the jury. On this basis, the jury verdict is not inconsistent with substantial justice.

Second, Zezulka requested the standard jury instruction relating to an intervening or superseding cause, SJI2d 16.04. This Court has held that an "intervening cause does not break the connection between the defendant's negligence and the injury if the intervening event was foreseeable." *Wymer v Holmes,* 144 Mich App 192, 198; 375 NW2d 384 (1985), aff'd 429 Mich 66 (1987). In the instant case, it was foreseeable that the decedent could harm himself or others if his belt remained in his possession. This is exactly why the MSU Department of Public Safety had a rule which required that all potentially harmful objects be removed from a prisoner's possession before being placed in a detention cell. Thus, the trial court did not err

in refusing to give the requested instruction. Certainly, the jury verdict is not inconsistent with substantial justice based on this allegation of error.

IV

Linda Zezulka argues that the trial court erred in admitting into evidence the rules and regulations of the Michigan Department of Corrections and by instructing the jury that violation of those rules constitutes evidence of negligence. A decision whether to admit certain evidence rests within the sound discretion of the trial court, and that decision will not be set aside absent an abuse of discretion. *Schanz v New Hampshire Ins Co,* 165 Mich App 395, 405; 418 NW2d 478 (1988). When reviewing a trial court's decision to allow the jury to be presented with certain evidence, this Court will not assess the weight and value of the evidence, but will only determine whether the evidence was of such a nature that it could be properly considered by the jury. *Schanz, supra.*

In *Young v Ann Arbor, supra,* 119 Mich App 517-518, this Court ruled that, pursuant to MCL 791.262; MSA 28.2322, the Department of Corrections' rules and regulations apply to local holding facilities and that the trial court in that case erred by not instructing the jury on the Department of Corrections' rules and regulations, stating:

> There is no reason to believe that the Legislature intended such authority to extend only to local facilities which detain charged or convicted persons for more than 48 hours, that which distinguishes a "jail" from a "lockup." We conclude that the Legislature intended to give the department the authority to supervise and inspect all local penal institutions, however specifically designated.

We hold that the statutory term "local jail" was meant to encompass any facility operated by a unit of local government for the physical detention of persons charged with or convicted of a criminal offense. This includes, at least, city and county jails and local lockups.

Defendants argue that, even if the department has the authority to promulgate rules for lockups, such authority does not extend to a "holding cell" which is not within a lockup, such as the cell where plaintiff's decedent died. A "holding cell" is defined by the department as:

" . . . a cell used to hold 1 or more persons temporarily while awaiting processing, booking, court appearance or discharge." 1979 AC, R 791.502(4).

Since we conclude that the department has authority to supervise, inspect, and promulgate rules for all local penal facilities, we find it unnecessary to determine whether the Ann Arbor facility was specifically a "lockup" or a "holding cell." The department's rules clearly apply to a lockup and to a holding cell within a lockup. See 1979 AC, R 791.511(1) and R 791.557. It would be inconsistent to hold that the department's rules apply to a holding cell within a lockup, as specifically defined by the rules, but not to a holding cell within a local penal facility which does not meet the specific definition of a jail or lockup. Inmates confined to a holding cell should be given the same rights and protections regardless of the label placed on the holding facility.

Furthermore, if the department's rules mandatorily apply only to lockups, and not to holding cells which are not contained in lockups, then those persons who are merely detained temporarily while awaiting processing would be afforded less protection than inmates convicted of criminal offenses who are confined in lockups. We decline to give legal sanction to defendants' "holding cell" versus "lockup" exercise in verbal gymnastics when the result would be to deny equal care to those citizens who, if anything, are entitled to

greater protection. It has repeatedly been held
that the state owes a higher degree of care to
those incarcerated in its jails who have not been
tried than to those who have already been con-
victed of criminal offenses. *People v Bland,* 52
Mich App 649, 656; 218 NW2d 56 (1974).

We note that MCL 791.262; MSA 28.2322 was
amended in 1984 to remove local detention facili-
ties from the regulatory and supervisory authority
of the Department of Corrections. However, in
*Davis v Detroit, supra,* this Court stated that the
amendment had prospective application only.
Thus, the rules and regulations of the Department
of Corrections were effective in 1982 and should
have been applied in this case. Accordingly, the
trial court did not abuse its discretion in allowing
those rules and regulations into evidence.

The trial court instructed the jury that a viola-
tion of the rules of the Department of Corrections
was "evidence of negligence" and constitutes the
prescribed minimum standard for certain facilities.
After objection by defense counsel, the trial court
clarified the instruction and repeated that "such
violation is evidence of negligence." This instruc-
tion did not result in unfair prejudice to Zezulka
such that the failure to vacate the jury verdict
would be "inconsistent with substantial justice."
As noted above, the Department of Corrections'
rules and regulations applied to this situation and
this case. Even if we were to hold that those rules
and regulations did not apply in this case, the
rules of the MSU Department of Public Safety
required that if a prisoner has objects that he
could use as weapons against himself or others,
such objects must be removed from his person
before lockup. Therefore, Zezulka's failure to com-
ply with the rules of the Department of Correc-
tions or the rules of the MSU Department of

Public Safety was evidence of negligence. The trial court did not err in giving this instruction to the jury.

V

Zezulka argues that the trial court erred by permitting testimony regarding the Court of Claims action against MSU to be interjected into the jury action against Zezulka. "Cases in the court of claims may be joined for trial with cases arising out of the same transaction or series of transactions which are pending in any of the various trial courts of the state." MCL 600.6421; MSA 27A.6421. A decision whether to admit certain evidence rests within the sound discretion of the trial court, and that decision will not be set aside absent an abuse of discretion. *Schanz, supra.*

In the instant case, the parties stipulated to the consolidation of the Court of Claims action and the circuit court action. At the jury trial, the parties presented evidence to the jury that was relevant to both the circuit court and the Court of Claims actions. Evidence that was relevant only to the Court of Claims action was kept on a separate record and was not presented in front of the jury. Testimony regarding the alleged building defect was elicited outside the presence of the jury. Additionally, the trial judge instructed the jury at the beginning and the end of trial not to consider any evidence regarding a possible building defect because that was a matter for the court to decide. Testimony regarding the physical layout of the MSU facility was heard by the jury, but such testimony was relevant to both the circuit court and the Court of Claims actions.

Zezulka failed to object to any of the allegedly improper testimony that was introduced to the

jury. Further, on appeal Zezulka fails to point out testimony that was presented to the jury that the jury should not have heard. Based on a review of the trial transcript, we cannot say the trial court abused its discretion in allowing the evidence to be heard by the jury.

VI

Zezulka argues that the trial judge had improper contact with the jury during deliberations. In Michigan there is a strict rule prohibiting communication with a deliberating jury outside of the courtroom and outside of the presence of counsel. See *People v Cain,* 409 Mich 858; 294 NW2d 692 (1980), rev'g 94 Mich App 644; 288 NW2d 465 (1980); *Zaitzeff v Raschke,* 387 Mich 577, 579; 198 NW2d 309 (1972); *People v Kangas,* 366 Mich 201, 206-207; 113 NW2d 865 (1962). A party need not establish prejudice before a new trial is granted. *People v Lyons,* 164 Mich App 307, 310; 416 NW2d 422 (1987).

Zezulka has not shown that the trial judge entered the jury room during deliberations in the instant case. At a post-trial hearing on this issue, the presiding judge (who was not the same judge who tried the case originally) found that there was no proof to substantiate any allegations that the trial court engaged in ex parte communications with the jury during deliberations. The record on appeal supports the ruling of the hearing judge. Therefore, Zezulka does not deserve a new trial based on this allegation of error.

VII

Zezulka and MSU argue that, because of a combination of errors at trial, they did not receive a fair

and impartial trial. Although individual errors may not establish prejudice, they may, in combination, equal substantial prejudice compelling a reversal. *Haynes v Seiler,* 16 Mich App 98, 103-104; 167 NW2d 819 (1969), lv den 382 Mich 754 (1969).

We have not found a combination of errors which equal substantial prejudice that in turn would compel a reversal. Based on the record, Zezulka and MSU received fair trials in the circuit court and the Court of Claims respectively.

## VIII

MSU, Bernitt and Badgley argue that the trial court abused its discretion when it denied their petition for attorneys fees pursuant to 42 USC 1988. 42 USC 1988 provides in pertinent part that in "any action or proceeding to enforce a provision of [§ 1983] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The prevailing defendant in a civil rights case may recover attorneys fees only if the trial court, in its discretion, determines that the suit was vexatious, frivolous or brought to harass. *Young v Barker,* 158 Mich App 709, 726; 405 NW2d 395 (1987), lv den 429 Mich 857 (1987).

The trial court properly denied defendants' petition because plaintiff's action was not vexatious, frivolous or brought to harass. In the instant case, plaintiff prevailed on claims of negligence and 42 USC 1983 violations against Zezulka. Plaintiff prevailed on a defective building claim against defendant MSU, even though the Court of Claims found in favor of MSU on plaintiff's § 1983 claim. The jury found that defendants Badgley and Bernitt were negligent but that their negligence was not a proximate cause of decedent's death. Thus, Badgley and Bernitt prevailed on the § 1983 claim

against them and received no cause of action on a negligence claim against them. Viewing the circuit court and Court of Claims verdict as a whole, all of the defendants were negligent in some manner and one defendant, Zezulka, violated decedent's civil rights pursuant to 42 USC 1983. Based on these lower court findings, it is apparent that plaintiff's action was not vexatious or frivolous. Therefore, the trial court did not abuse its discretion in denying defendants' petition for attorneys fees.

Affirmed.

MICHAEL J. KELLY, P.J. *(concurring).* I concur in the opinion for affirmance principally because *Reardon v Dep't of Mental Health,* 430 Mich 398, 413; 424 NW2d 248 (1988), reaffirmed the viability of *Lockaby v Wayne Co,* 406 Mich 65, 76-77; 276 NW2d 1 (1979). Although both Lockaby and Hickey acted on the cell defects, I do not think *Reardon* rules out recovery if the building defect is foreseeably acted on by a mental incompetent or a substance impaired actor.

I therefore would affirm the Court of Claims as well as the circuit court.

SULLIVAN, J. *(dissenting).* I dissent only from part I of the majority opinion which addresses the public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106). I do not believe that the Legislature intended that the public building exception to governmental immunity be applied to facts such as those contained in this case. The Court in *Reardon v Dep't of Mental Health,* 430 Mich 398, 415; 424 NW2d 248 (1988), clarified that the duty imposed by the public building exception, a narrow exception, "relates to dangers actually presented by the building itself."

Some would limit a reading of *Reardon* to those cases in which an intervening third party acts to cause the injury. I read *Reardon* as saying much more. The *Reardon* Court traced the history of the public building exception, and concluded that the Legislature intended that exception to apply to cases presenting a fact situation similar to *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), the case which precipitated the governmental immunity act. *Reardon, supra,* pp 408-409. Therefore, it would apply to an injury arising out of a dangerous or defective physical condition of the building itself. In *Williams,* the decedent was killed when he fell down an elevator shaft. The elevator was defective in that it had an opening which was not guarded or protected in any way and a space, about thirty inches wide, between the elevator floor and the side of the shaft. The condition of the building itself posed a danger to the decedent. However, in this case, as in the companion case to *Reardon, Schafer v Ethridge,* there is no evidence that the physical condition of the room itself posed a danger to the decedent.

As our Supreme Court said in *Reardon, supra,* p 417, "the Legislature intended to impose a duty to maintain safe public buildings, but not necessarily safety *in* public buildings."

I would reverse the judgment of the Court of Claims against MSU.